ELECTA BOURNE *vs.* MONTRAVILLE A. BOURNE, executor, and ELLEN BOURNE.

January Term, 1897.

Present: ROSS, C. J., ROWELL, TYLER, MUNSON and START, JJ.

*Exceptions to Master's Report—Reviver of Mortgage for Benefit of one with whose money it was paid.*

Objections taken to evidence before a master must be renewed by exceptions filed to the report in the court of chancery in order to be considered here.

The oratrix conveyed to her son, and took back a life lease, upon the oral agreement that he should support her. She afterwards joined with him in a conveyance of the property, the proceeds being declared by him to

be held as the land had been. He used them to pay off a mortgage upon other land and died insolvent. *Held*, that the mortgage should be revived and foreclosed for the benefit of the oratrix, her right being superior to that of a creditor whose debt was not incurred in reliance upon the mortgage having been paid.

BILL IN CHANCERY. Heard on the report of a master at the March Term, 1896, Rutland County. *Taft*, Chancellor, decreed that the defendants should convey the Engrem premises to the oratrix unless they should elect to pay her the amount withdrawn from the savings bank by Charles E. Bourne, and that in the event of such election the Engrem mortgage should be revived and foreclosed for the enforcement of such payment. The defendant Ellen Bourne appealed.

The facts are recited in the opinion.

*Joel C. Baker* for the oratrix.

Under the master's findings the deed and contemporaneous lease were testamentary papers only. *Carleton* v. *Cameron*, 54 Tex. 721: 38 Am. Rep. 620 and note; *Thrall* v. *Spear*, 63 Vt. 273. If not, the property was held as security.

The money received upon the sale of the homestead merely took the place of the land and was impressed with the same trust. Charles E. Bourne attempted to execute the trust by devising the Engrem premises to the oratrix. Although he failed in this method, the court should give effect to the trust. I Perry, Trusts, § 98; *Savings Institution* v. *Hathorn*, 88 Me. 122: 51 Am. St. Rep. 389, note; *Savings Bank* v. *Albee*, 64 Vt. 574; *Janes* v. *Falk*, 50 N. J. Eq. 468; *Goldsmith* v. *Goldsmith*, 145 N. Y. 316; *Williamson* v. *Yager*, 91 Ky. 282, note: 34 Am. St. Rep. 189.

*Butler & Moloney* for the defendants.

The defendant, Ellen Bourne, is a creditor as well as the widow of the testator. The will is ineffective as against creditors. It is not certain that the attempted devise was intended as a recognition of a trust.

The parole testimony was improperly received to vary the contract shown by the deed and lease.

Although Charles E. Bourne expressed an intention that the oratrix should have the benefit of the money received from the sale of the place he never acknowledged her right to it.   At least the amount of the note which he had received from the oratrix and her husband should be deducted and she would only be entitled to the income, not to the principal, of the balance.

The facts do not make a case for subrogation.   *Gerrish* v. *Bragg*, 55 Vt. 337.   The Engrem mortgage had been paid and discharged.   *Bartlett* v. *Wade*, 66 Vt. 631.

ROWELL, J.   Before and on June 26, 1879, Edmund Bourne, the oratrix's husband, who died in July, 1879, owned a place in Danby, where they lived.   On that day, by a warranty deed of that date in common form, they conveyed the same to the testator, Charles E. Bourne, their son, for the expressed consideration of a thousand dollars, and Charles gave them back a lease thereof "for and during the term of their natural lives and the survivor of them."   It is found from oral testimony seasonably objected to by the defendant Ellen, who is the widow of Charles, that Charles paid nothing for said deed at the time, and that it was not intended to evidence an absolute sale to him, but was only to secure him for what he had already done, or might thereafter do, for his father and mother; that it was expected she would continue to live on the place and be supported principally by Charles, and that her support would at least equal the value of the place, which would belong to Charles when she was dead.   This arrangement was known to the other members of the family, and acquiesced in by them.

The objection to the admission of this oral testimony cannot be availed of here, as it does not appear that an exception to the report for that reason was filed in the court of chancery.   V. S. 942   The arrangement found therefrom must, therefore, stand for what it is legally worth.

The oratrix continued to live on the place till sometime in 1885, and was supported by her children, including Charles, who severally contributed what they saw fit. Whether Charles' contributions were regarded as a legal claim against her, any more than the contributions of her other children, does not appear, unless it is shown by the conveyances and the arrangement aforesaid.

On January 6, 1886, the place was sold for eleven hundred dollars, the oratrix joining in the deed. Charles had the money, and deposited it in a savings bank in his name. In 1887 he drew it from the bank and paid most of it on a purchase-money mortgage that he had given on two lots in the Village of Rutland, which he had previously bought of Engrem. On January 26, 1891, Charles borrowed six hundred dollars of his brother, the defendant Montraville, who is executor of Charles' will, and with that and other money, paid the balance due on the Engrem mortgage, which was then discharged of record, and thereupon he gave Montraville a mortgage on said lots for six hundred dollars, which is still a lien thereon.

After the place in Danby was sold, the oratrix lived awhile with one of her daughters, and later with her son, Montraville, who has supported her for several years. It does not appear that Charles, who died July 2, 1892, contributed anything to her support after she left Danby, nor that he paid her any interest on the money in his hands; but he frequently said that he considered the money subject to said arrangement, and intended that his mother should have the benefit of it to the same extent as though it was the family homestead in Danby, and that he had arranged his affairs so that she would be protected if he should be taken away. The only arrangement he made in this regard was, to will her the Engrem lots.

The defendant Ellen is a creditor of Charles' estate. There are other creditors and the estate is insolvent.

As the oratrix cannot take under the will as against creditors nor Montraville's mortgage, she seeks to revive the Engrem mortgage, and to set it up for her benefit to the extent that the money derived from the Danby place went into it. The defendant Montraville does not object to this, although both he and the other creditors would be unfavorably affected thereby; but the defendant Ellen does object, and claims that a case is not made that warrants its being done as against her. But as she did not become a creditor on the strength of the Engrem mortgage being paid and discharged, she cannot object as a creditor to granting the relief prayed for if the case otherwise warrants it.

It is clear that this money did not belong to Charles. The place from the sale of which it was derived was devoted to the support of the oratrix and her husband, not merely the use, but the *corpus* as well, for it was expected that the full value of it, at least, would be required for such support. The money, therefore, was, in equity, devoted to the same purpose as the land, and it was so intended and declared by Charles, who undertook to effectuate it by his will. Failing in that, there is no reason why equity should not follow the money into the Engrem mortgage, and make it available to the oratrix according to the original intent, by reviving the mortgage and setting it up for her benefit to the extent that the money impressed with the trust went into it, augmented by the interest thereon since.

But how much of it shall now be regarded as thus impressed? The defendant Ellen claims that the amount of the two-hundred-and-fifty-dollar note of January 1, 1875, should be deducted. That note was given to Charles by his father and mother. But as the oratrix was a married woman when she signed it, she is bound thereby neither at law nor in equity. If it was given for any indebtedness, which was denied and does not very clearly appear, it was for her husband's, not hers. *Rood* v. *Willey*, 58 Vt. 474. And if it is now good against his estate, which does not

appear, the amount of it cannot be deducted from this trust fund, as the fund is not devotable to that purpose.

We think the effect of the deed, the life-lease, and the oral agreement found by the master, is, that Charles was to support his father and mother during life, and therefor, and for what he had already done for them, was to have the place at their death. The life-lease devoted the entire use of the place to their support first of all and at all events. What that lacked of being enough, if anything, Charles was bound to make up, as the rights of the old folks under the lease necessitated the keeping of the *corpus* of the place intact. If Charles was living, this duty could be enforced against him. But he is dead, his estate is insolvent, and the place has been converted into money, and now the oratrix's only remedy is, to follow the money, in which her rights are the same as they were in the place, in which she had an equity aside from the lease, except as those rights may have been altered, if at all, by the changed condition of things. She is entitled, first, to the entire use of the money in any event, as she was to the entire use of the place; and as she cannot now obtain from Charles what more she may need, if anything, she is entitled, second, to resort to the fund itself therefor, as she would have been to the land itself had it not been sold. If there is anything left of the principal of the fund at her death, it will belong to Charles' estate, but first there must be deducted therefrom the amount of whatever Charles ought to have paid for her support but did not, which will go to her estate.

The master reports that most of the money that came from the place went into the Engrem mortgage, but that he cannot tell just how much. This is not definite enough to found a decree upon; there will have to be a further inquiry concerning it. When that amount is ascertained, a proper decree should be entered, reviving and setting up said mortgage to that extent, augmented by the interest thereon since the money went into said mortgage, for the benefit of

the oratrix as herein indicated. And inasmuch as said mortgage may be redeemed, a trustee should be seasonably appointed to receive, hold, and disburse the money under the order of the court; and for this purpose the case should be retained.

*Decree reversed and cause remanded with mandate.*