GEORGE W. RANDALL *v.* G. E. MOODY ET AL.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed August 22, 1913.

*Equity—Master's Report—Decisions—Review—Objection—Ne-
cessity—Harmless Error—Boundaries—Evidence — Admis-
sibility—Surveys.*

P. S. 1265 requires a master to report his decisions as to the admission
or rejection of evidence only when requested to do so by the party
against whom the decision has been made, and so exceptions to
those decisions will not be considered on review where the master
has not reported the decisions and has not been requested to do so.

Under P. S. 1268 questions regarding the admission or rejection of
evidence by masters will be treated on review as waived, unless
saved in the report, though insisted on in the exceptions.

In a proceeding to enjoin defendant from cutting timber on orator's
four designated lots, a finding by the master that "said lots" were
originally laid out and surveyed with designated dimensions *held*
not a finding that all the lots then laid out have those dimensions,
but only the four lots in question.

In an action to restrain trespasses on orator's land, and involving the
boundary line between his land and defendants', the failure of the
master to find that defendant owned all of certain land is harmless,
where there was an affirmative finding that orator did not own it.

Exceptions to the admission or exclusion of evidence by a master will
not be considered on review where they do not state the grounds
on which they were based.

Exceptions to the report of a master on the ground that designated
findings were contrary to the evidence will not be considered on
review, unless the exceptor points out wherein the findings are
contrary to the evidence.

The ruling of the court below denying orator's motion to recommit the
report of a master will not be disturbed on review, where no abuse
of discretion is shown.

In a suit to enjoin trespasses on land and to recover for timber already
cut, where it appeared that owing to local conditions the compass

line might vary, and so a transit line might not be the same as the compass line established as a straight distance between two monuments, evidence of cutting beyond the transit line was properly excluded, where it did not appear on what particular part of the lot the cutting was done, nor where with reference to the compass line.

No amount of experience will qualify a witness to testify where a surveyor's line from one monument would strike another line with reference to a monument, where he had not actually run the assumed line.

APPEAL IN CHANCERY, Washington County. Heard at Chambers, December 26, 1912, *Miles,* Chancellor, on the pleadings, master's report and orator's exceptions thereto. Exceptions overruled and bill dismissed with costs to defendants. The orator appealed. The opinion states the case.

*R. M. Harvey* for the orator.

*T. W. Moloney* and *L. C. Moody* for the defendants.

ROWELL, C. J. This is a bill in chancery to enjoin the defendants from further cutting wood and timber on the orator's land in Waterbury, and to recover compensation for what they have cut.

The bill was answered and the case went to a master, who returned a report, the substance of which is this. The northwest portion of Waterbury is composed of 44 lots and a gore, which formed a part of Bolton till 1851, when they were set to Waterbury. Said lots were laid out in four tiers of eleven lots each, or eleven ranges of four lots each, the ranges extending easterly and westerly the length of four lots, and the tiers extending northerly and southerly the width of eleven lots. The gore occupied territory northerly of said lots, and between them and the town line of old Mansfield, now Stowe, and was wider at its easterly end than at its westerly end.

The orator owns many of said 44 lots, and among them, the four comprising the most northerly range, being lots 179, 180, 181, and 182, going from west to east. The defendants Moody and the two O'Neills own a large part of the gore, and, as far as the report is concerned, the master says, may be treated

as owning the whole of it. Said four lots were laid out and surveyed with the rest of the 44 lots, under the authority of the proprietors of Bolton, by John Johnson and Henry Teachout, surveyors, the work of the survey commencing in October, 1800, and ending in May, 1801. Said four lots were laid out to contain a hundred acres each, exclusive of an allowance for public roads; were 165 rods and 8 links long from east to west, and 100 rods wide from north to south; the range lines running S. 55° E., and the end lines N. 35° E., making them rectangular in shape.

Said gore was not surveyed at the time the lots were laid out, but remained undivided till 1836 and 1837, when a large part of it was laid out into pitches, which were not uniform in size nor shape.

The parties agreed before the master that the only question to be then considered was, the location of the true line between said four lots and the gore, and the facts reported, the master says, relate to that question.

The line claimed by the orator was marked at its easterly end, or what would be, according to his theory, the northeasterly corner of lot 182, by the decayed remains of a stake found in the ground in a pile of stones at a point in the line between the old town of Bolton and Waterbury, 161½ rods southerly of the northeasterly corner of the former town, and extended from that decayed stake corner, N—° W. to a stake and stones at the northwest corner of lot 179, as claimed by the orator, forming the northerly line of said four lots.

The line claimed by the defendants as the line between said four lots and the gore was marked at its easterly end by a "big maple, down," as indicated on the plan, which we will call, as the master does, "an old maple stump," on the line between old Bolton and Waterbury, 29 rods and 15 links southerly of the northeasterly corner of lot 182 as claimed by the orator, and ran from that stump on a compass line, N. 49° W., as of the year 1907, to a stone set in the ground and forming, as claimed by the defendants, the northwest corner of lot 179.

The orator relied for the location of the line as he claimed it, on the survey bills of five of the pitches into which the gore was divided, and introduced copies of said survey bills, and the testimony of witnesses to support his claim.

Said survey bills, except that of the Dan Carpenter pitch, which is the most easterly pitch, purport to have been made with reference to the northerly line of said four lots; and the theory of the orator is that the southerly line of said pitches and the northerly line of his land are determined by the courses and distances set down in said bills. But the master finds that said bills are very inaccurate; that in order to lay out upon the ground the surveys as they appear on the records, it would be necessary to vary materially both the courses and the distances; that in the line so formed and claimed by the orator there is not, and never has been, so far as the testimony shows, a single tree bearing a mark of the age of the original Johnson and Teachout survey; that the southeasterly corner of the pitch surveys, which the orator claims to be the northeast corner of lot 182, is described in said surveys, made in 1837, as a stake and stones, while in said original survey of said lot it is described as a maple tree; and that if the line is located as claimed by the orator, his said four lots, instead of being 100 rods wide, as appears by said original survey, would be 131 or 132 rods wide.

The line claimed by the defendants is marked in the first 234 rods of its course, beginning at the maple stump and running N. 49° W., by no less than sixteen trees having upon them surveyor's marks as for an east and west line. These trees were blocked and counted in the fall of 1907 and the early spring of 1908, and the rings of growth in many of them were 106 or 107. Some of said trees showed two sets of marks, one set counting as above stated; and the other set, about 75 years. Over the rest of the course of the line claimed by the defendants, going westerly from the 234-rod point, there are no marked trees of an age to correspond with the age of the original survey; but it appeared in evidence and by observation on the ground that the spruce timber had been removed from the whole of the territory traversed from said point, and that over the greater portion of that distance all old growth stuff had been cut off.

The line claimed by the defendants is marked at its easterly end, which would be the northeasterly corner of lot 182, by a decayed maple stump with the rotten remains of a large maple tree on the ground beside it. This corresponds with the descrip-

tion of the original survey, and a boundary made by this line gives the orator full measure in the width of his lots.

From a consideration of all the evidence and from observation made upon the ground, the master finds that the line claimed by the defendants as above described is the true line between the orator's lots and the gore.

The orator filed divers exceptions to the report for error in the admission and rejection of evidence. But these exceptions cannot be considered here, for the master has not reported his decisions as to them, and was not requested to, as far as appears, without which he was not obliged to. P. S. 1265. This being so, sec. 1268 of the statute precludes us from hearing those questions, for it has been held that said sections mean that such questions shall be treated in this Court as waived unless saved in the report though insisted upon in the exceptions. *Winship* v. *Waterman,* 56 Vt. 181. In *Fife* v. *Cate,* 85 Vt. 428, it is held that correct practice forbids exceptions to a master's report for error in the admission of evidence not based on objections made at the trial. The same thing is held in *Sargent* v. *Burton,* 74 Vt. 27. There the general rule is broadly stated as embracing all exceptions to a master's report, and so it does, but we ought to have noted then what we note now, that the rule in its entirety is applicable only where the parties are entitled to an opportunity to examine the report before it goes beyond the control of the master; and as that opportunity is not secured to the parties in our practice, the rule is applicable here only to exceptions to the admission and rejection of evidence.

The orator also excepted to the report, for that the master found facts without evidence; against evidence; and failed to find when there was evidence; and to the ultimate finding that the line claimed by the defendants is the true line.

The first exception is not considered, as the orator concedes that it concerns a matter not bearing on the question in the case.

The second exception is to the finding that said 44 lots were laid out and surveyed by Johnson and Teachout in 1800, and were only 165 rods and 8 links long and 100 rods wide, and were rectangular; for that the evidence showed that said lots were not laid out separately and were not uniform in length and width, and were much more than 100 rods wide, and some of them much more than 165 rods long. But we do not construe the report to include all of the 44 lots in this finding, but only

lots 179, 180, 181, and 182. This is clear when attention is paid to the language used and the way it is used. Thus, the report says that "said lots," obviously meaning said 4 lots, were laid out and surveyed with the balance of said 44 lots, etc.; and that "said lots," again meaning said 4 lots, were laid out "to contain" a hundred acres each, exclusive of an allowance for public roads, and then gives courses and distances, all which exactly accords with the record of the survey of those lots. And besides, we do not regard this as a substantive finding of facts, but only as a statement of the purport of the record.

The third exception is, that the master has failed to find the size and shape of the pitches in the gore, and to find that they were and are all the land the defendants owned in that vicinity northerly of the line claimed by the orator as the north line of said 4 lots.

But the report itself answers this exception as to not finding the size and shape of the pitches, for it is apparent from it that the failure complained of was due to the inaccuracy of the survey bills pointed out by the master. As to the failure to find that the pitches were all the land the defendants owned, etc., it is not pointed out nor seen how that failure is material; for whether they were all or not, the orator owned only to the true line between his lots and the gore, and it does not appear that such a finding would have aided in locating that line. And besides, as the master says that as far as his report is concerned the defendants may be treated as owning the whole gore, it seems probable that the case may have been tried on that theory.

Exceptions 4, 7, 8, 9, and 10 are not considered, as they state no ground on which they are based. Rule 38; *Fife* v. *Cate*, 85 Vt. 428.

The fifth exception is trivial. It is because the master calls the big maple a stump. And we quite agree with the orator's counsel that this misleads nobody, and leave it there.

The sixth exception is to the finding that over the remainder of the course of the line claimed by the defendants, going west from the 234-rod point, there are no marked trees of an age to correspond with that of the original survey; and to the finding that it appeared in evidence and upon observation on the ground, that the spruce timber had been removed from the whole of the territory from that point, and that over the greater part of that distance all the old growth stuff had been cut off.

The ground of this exception is, that the findings are contrary to the evidence.

The orator does not now question the finding as to marked trees west of said 234-rod point, but says that the finding upon evidence and observation on the ground is without evidence and contrary to all the evidence. He says that line was marked by the defendants' surveyor, Dewart, in 1907, and that the master never was on the ground till 1910, and that then he did not go upon the line from the 234-rod point to the westerly ends of the lots in question; and if he had, he would have found that there was no cutting on that line and never had been. He then refers in a general way to what one witness called by the defendants testified, but does not give his name nor indicate where his testimony can be found. He also says that witnesses testified to there having been no cutting on that line westerly of said 234-rod point before Dewart marked his line there. But none of these witnesses are named, nor are we told where their testimony can be found. He also says that at the very last hearing there is an instance of "some man" testifying that he worked one winter later, and cut along the Dewart line 70 or 80 rods through a growth of old timber. But it is not for us to search the transcript for this testimony. It is for counsel to point it out.

The court below having overruled the motion to recommit the report, and not *pro forma*, as claimed, and no abuse of discretion respecting it appearing, this Court will not review the action of that court. *Allen's Admr.* v. *Allen's Admr.*, 79 Vt. 173.

It was adjudged and decreed below that the line found by the master to be the true line between said four lots and the gore was the true line, and it was established as such; and thereupon the case was again sent to the master, to find and report whether the defendants had trespassed upon the orator's land, and if so, to find and report the damages.

The master having found no such trespass, reported accordingly, whereupon the exceptions saved by the report to the rejection of evidence were overruled, and the bill dismissed with costs.

It is found in this report that the orator had caused to be run and plainly marked, a transit line, two miles or more in length, between the ends of the established line, and that this

transit line did not coincide with the established line, but ran northerly of it some of the way and southerly of it some of the way, and at the 234-rod point, ran 14 feet northerly of it, which, the master says, was the locality where the orator claimed the defendants cut onto him.  It is also found that at some points in the course of this transit line, there are local attractions that affect the compass needle so that a line run by it without taking back sights will vary from a strictly straight line at those points; and in this connection it is found from the testimony of expert land surveyors that owing to local attractions a compass line will usually vary from a strictly straight line.

The orator offered to show by the witness Thorpe, the amount of cutting he found to have been done south of the transit line.  This offer was excluded, and properly, for it contained no offer to show that the cutting extended over the established line.

The orator offered to show the cutting of other trees on lot 179 at a distance of more than 15 feet southerly of the transit line.  But the master says that it did not appear upon what particular part of the lot the trees referred to in the offer were cut, nor by the offer where said cutting was done with reference to the compass line.  This being so, it cannot be said that this was an offer to show cutting over the established line, and no cutting was admissible that did not tend to show that.

This disposes of the similar offers as to lots 180, 181, and 182.

The orator offered to show that 57 other trees were cut by the defendants on said four lots, southerly of the transit line. But this had no visible tendency to show cuttings over the established line, and was properly excluded.

The orator also offered to show by one Smith, a civil engineer, that he ran a line from a point 14 feet northerly of the most westerly of said old marked trees referred to in the original report, said point being 234 rods west of the "old maple stump," thence westerly to the line of the town; and offered to show measurements from that line to the cutting of the defendants, as claimed by the orator, at several different places, and to show the direction of said line, and that the cutting claimed by the orator extended southerly of that line as many as 45 feet at some points, and lesser distances at other points, and where that line intersected the westerly line of the town with reference to

the stone post.  This offer was also properly excluded, for it cannot be said to amount to an offer to show cutting south of the established line; and the orator does not claim that in his brief, nor say anything specifically about it; nor anything specifically about any of the exceptions to the last report except the eighth, which was to the exclusion of an offer to show by Thorpe that the defendants cut and took away 54 trees between the transit line and the established line, concerning which he says, that had this evidence been admitted, it would have been easy to calculate the distance to the west line of the lots where the cutting was done, knowing the distance that each tree or set of trees was from the 234-rod point.  But even this does not show the offer relevant, for it still does not point to anything to show a cutting over the established line.

The offer to show further by the witness Smith the amount of cutting done by the defendants southerly of the line he ran, and at what distances therefrom, was also properly excluded.

The further offer to ask the same witness where a surveyor's line running from the stone corner S. 49° E., would strike the line of lots in dispute on the old Waterbury line with reference to the "maple stump," and where it would pass with reference to the most westerly of the old marked trees at the 234-rod point,—may be disposed of on the authority of *Baker* v. *Sherman*, 71 Vt. 451, by saying that no amount of experience would qualify the witness to speak on that subject, he not having run such a line.

Thus have we disposed of all the exceptions to the last report; and it may be said of most of them that they are in contravention of the established line, which, for the purposes of that trial, could not be gainsaid.

*Affirmed and remanded.*