HOOKER, CORSER & MITCHELL COMPANY *v.* JAMES F. HOOKER, WILLIAM H. CORSER, AND CHARLES D. WHITTAKER.

October Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed October 26, 1915.

*Appeal in Chancery—Remand—Powers of Trial Court—Pleading—Amendments—Former Decree—Alteration—Law of the Case—Proceedings Before Master—Objections to Report—Exceptions—Sufficiency—Master and Servant—Enticing Away—Damages—Defences—"Conspiracy"—Acts of Conspirators—Unlawful Acts—Evidence.*

In a suit in equity, after a decree for plaintiffs on appeal and remand for assessment of damages, it was not abuse of discretion for the court of chancery to refuse to allow defendants to amend their answer by the introduction of a subject-matter that was known to both them and their solicitors when the original answer was filed, but for the delayed averment of which no explanation was made.

Under P. S. 1317-1318, providing that a court of chancery after mandate in a cause, heard and determined in this Court, has been sent down, may permit either party to file new or amended pleadings, where the cause has been remanded solely for the assessment of damages, an amendment by the defeated party, presenting a defence to the merits, cannot be allowed, the court of chancery having no greater power in that regard than it had without the statute.

Where a master failed to comply with a request, made under P. S. 1265, to report his decisions as to the admission or rejection of designated evidence, the remedy of the objecting party is to move to recommit so that the report may be made complete in that respect.

Under P. S. 1268, objections to the admission or exclusion of evidence by masters are forever waived, unless recited in the report, and insisted on in the court of chancery by exceptions duly filed to the report; and so, on remand after decision on appeal, the chancellor has no power, either under P. S. 1317, or otherwise, to

give the objecting party the benefit of question so waived, by allowing him to amend his exceptions to the report.

Where defendants enticed away plaintiffs' servants, the measure of damages is the difference between the profits actually earned by plaintiffs and those that they would have earned but for the unlawful acts, to be ascertained by a comparison of the years within a reasonable period before the unlawful acts with those thereafter.

A conspiracy is a combination of two or more persons to effect an illegal purpose, or to effect a legal purpose by illegal means, and, when formed, any, even otherwise innocent, acts of the conspirators, or either of them, in execution of the unlawful purpose, is admissible against them in an action for damages resulting from the conspiracy.

In an action for damages for enticing away plaintiffs' servants, evidence *held* to sustain the finding that the unlawful act was the sole cause of plaintiffs' loss of profits.

In such case it cannot be said, as matter of law, that the master erred in not considering the profits from plaintiffs' business for a period of more than four years prior to the wrongful act, where he in effect found the four-year period to be a reasonable one for the requisite comparison.

In an action for damages resulting from a conspiracy whereby plaintiffs' servants were enticed away, plaintiffs are entitled to recover all damages proximately resulting from any wrongful acts done in fulfilling the common design, and what was the cause, or combined causes, of the injury, is a question of fact; and new business obtained by plaintiffs after such wrongful acts should not go in reduction of their damages, where their plant was capable of doing such new business in addition to that it had at the time of the wrong.

An exception to the whole of a master's report on the question of damages "for that the evidence received subject to defendants' exception was improperly received" is too general to reserve any question.

Where, apparently through inadvertence, a decree in chancery omitted an item of damage to which plaintiffs are plainly entitled, it will be corrected on appeal.

Where, on appeal in chancery from a decree for plaintiffs, granting them a perpetual injunction, with costs, the matter of costs below was particularly considered, the decree affirmed, and cause remanded for assessment of damages, the court of chancery has

no power thereafter to reopen the question of damages, nor to change the terms of the perpetual injunction.

APPEAL IN CHANCERY, Windham County, April Term, 1915. This case has been once before in the Supreme Court, 88 Vt. 335, when the decree below for the plaintiffs was affirmed and cause remanded for the assessment of damages. Heard on a special master's report assessing the damages, *Butler,* Chancellor. Decree for plaintiffs. Defendant appealed. The opinion states the case.

*Clarke C. Fitts, Robert C. Bacon* and *Herman E. Eddy* for the plaintiff.

*Barber & Barber* for the defendants.

WATSON, J. This case was before us as reported in 88 Vt. 335, 92 Atl. 443, on the question of defendants' liability, and it was remanded with mandate directing the assessment of damages. The facts there stated need not be repeated in this connection. The case being thus back in the court of chancery, the defendants petitioned the court, under the provisions of section 1317 of the Public Statutes, for leave to amend their joint and several answer, and for a further hearing on the question of liability. On hearing, the petition was denied by the chancellor as a matter of discretion. To this defendants excepted on the ground that such denial was an abuse of discretion, and the question so raised has been strenuously argued on appeal. It appears from the affidavits filed in support of the petition, that the subject-matter which the defendants sought to bring into their answer by the proposed amendment, was known to them and to their solicitors before and at the time when the answer was put in, and consequently it was known to them throughout the progress of the case on the main question, both in the court of chancery and in this Court. Yet notwithstanding such knowledge, the defendants did not, by affidavit in connection with the petition, undertake to give any reason, or to explain, why they did not originally aver in the answer the matters and things which, if the amendment had been permitted, they now claim would, when proved, constitute a good and full defence to the bill. Without considering whether the evidence by

which they propose to support such a defence would be in conflict with the rule that parol evidence is inadmissible to contradict or vary the terms of a written contract, we think as the matter was presented to the chancellor at that stage of the proceedings, the denial of the petition was the exercise of discretion within the bounds of reason and justice, and in a manner making it judicial. *Hubbard* v. *Hubbard,* 77. Vt. 73, 58 Atl. 969, 67 L. R. A. 969, 107 Am. St. Rep. 749, 2 Ann. Cas. 315. Moreover, if the amendment had been allowed, it would have operated to open the case for the trial of one phase of the question of liability right over again. In *Sheldon* v. *Clemmons,* 82 Vt. 169, 72 Atl. 687, it was held that sections 1317 and 1318 of the Public Statutes were not intended to give and do not give the court of chancery, after mandate from this Court in a cause heard and determined on the merits has been sent down and filed, power to permit the losing party to file new .or amended pleadings presenting the same issues for the purpose of litigating the same questions over again; that in such circumstances the statute gives the court of chancery no greater power in this respect than it has without the statute; and that the motion to amend the bill was properly denied as a matter of law. See *Blair* v. *Ritchie & Warden,* 73 Vt. 109, 50 Atl. 807.

Defendants excepted to the order denying their aforementioned petition, and on the same day undertook to "except to the failure of the court to report defendants' complete exception number nine taken to the master's report on file in said cause, and found on page ninety-seven of the printed (original) record; which said exception is as follows": then quoting "number nine" found on the page named of the record. . But neither the number there referred to, nor the one quoted, is an exception to the master's report, nor intended to be. It is number nine of the defendants' written requests to the master to report their objections and exceptions taken to his rulings in excluding certain evidence during the progress of the trial. This request was in accordance with the procedure required by section 1265 of the Public Statutes, and entitled defendants to a report of the master's decision made as to the rejection of the evidence to which reference was therein made. It is said that a full report was not made in compliance with this request. Granting this to be so, the course of defendants, if they cared to insist upon a further compliance with the request, was to move for a

recommittal of the report under an order from the chancellor directing the master to make full report in that behalf if he had not already done so. *Winship* v. *Waterman*, 56 Vt. 181. The record does not show that any attempt to have the report recommitted for this purpose was made; nor does it show that any exception was taken, or attempted to be taken, to the report because of the rejection of the evidence mentioned in the request. By P. S. 1268, "No questions in regard to the admission or rejection of evidence by the masters shall be heard in the supreme court, unless such objection is made by exception to the report, duly filed in the court of chancery." The statute has been construed as explicit that such question shall be treated as waived in the Supreme Court, unless saved in the report, and insisted on in the court of chancery, by exceptions duly filed to the report. *Winship* v. *Waterman*, cited above; *Scofield* v. *Stoddard*, 58 Vt. 290, 5 Atl. 314; *Bruce* v. *Continental Life Ins. Co.*, 58 Vt. 253, 2 Atl. 710; *Baxter* v. *Blodgett*, 63 Vt. 629, 22 Atl. 625; *Bourne* v. *Bourne*, 69 Vt. 251, 37 Atl. 1049; *Dee* v. *King*, 73 Vt. 375, 50 Atl. 1109; *Sargent* v. *Burton*, 74 Vt. 24, 52 Atl. 72; *Allen's Admr.* v. *Allen's Admr.*, 79 Vt. 173, 64 Atl. 1110; *Randall* v. *Moody*, 87 Vt. 68, 88 Atl. 321.

The chancellor granted the above mentioned motion of defendants to amend their exceptions, within the limitations named in his order of April 13, 1915. To this the orator excepted, and to the extent that the motion was refused, defendants excepted. Yet as we hold that the exceptions taken to the exclusion of the evidence mentioned, were waived by defendants' failure to have them shown by the master's report, and by the failure to except to the report, they were waived forever, and the chancellor had not the power, either under the provisions of P. S. 1317, or otherwise, to give defendants the benefit of them by granting their motion to amend the exceptions after the remand of the case from this Court. If this were allowable a party can perfect and take part of his exceptions to this Court, and if the decision here be against him and the cause remanded, he can perfect other of his exceptions saved during the trial and bring the case up for review on them, repeating in the same manner as many times as the decision on appeal be against him and he can find other exceptions to bring forward and can obtain leave from the court below so to do. Such a course of procedure is too inconsistent with the general rules

governing the proper administration of justice, to be approved or sanctioned. In view of this holding, it is unnecessary to consider the question of the admissibility of the evidence to the exclusion of which the amendment related. Nor is there anything left for consideration upon the exception to the overruling of defendants' motion for a further hearing for the purpose of offering such evidence.

The master adopted as the rule of damages the profits which the orator company would have made from 1910 to 1913, had the defendants not done the unlawful acts established, and held that the basis for such an estimate was to be found by comparing the profits of those four years with a reasonable period next preceding the time when the injury was inflicted, making an allowance for any loss shown resulting from depression in trade or other causes not the result of the defendants' unlawful acts. In that connection the master states that there was no evidence showing any other cause for the loss in business and profits. This rule is supported by authorities, and we think it is the true rule of application in the circumstances of this case. Sedg. Dam. Sec. 182; *Chapman* v. *Kirby*, 49 Ill. 211; *Allison* v. *Chandler*, 11 Mich. 542; *Peltz* v. *Eichele*, 62 Mo. 171; *Gunter* v. *Astor*, 4 Moore 12. Defendants excepted, however, to the finding that "there was no evidence showing any other cause for the loss in business and profits," on the ground that such finding is not in accord with the evidence. The transcript of the evidence is referred to in the decree for the purpose of presenting the questions raised by the exceptions to the report, and for the purpose of showing the exceptions taken to the admission and exclusion of testimony by the master. It appears that testimony was given by defendant Corser, in effect that on January 1, 1909, the price of cloth was 11¼ cents per yard, and the garments sold for eight dollars per dozen; that in the year 1911, the cloth was 13 cents a yard, and the garments sold for eight dollars and fifty cents per dozen; that it takes thirty-eight yards of cloth to a dozen; that the difference in the cost of the garments per dozen for those two years was about eighty cents, figuring roughly, while the increase in price was only fifty cents per dozen, so that the difference in profit was practically thirty cents on every dozen garments sold that year; and that this naturally would cover some of the decrease in per cent. of the profits for the latter year; that from 1910 to the present time, the advance in

the price of the finished garment has not been equal to the advance in the cloth, in other words, the profits have been less. At first blush this evidence would seem to sustain the exception to the report in the respect named. Yet this is not so when we look at the findings showing in effect that the failure of the increase in selling prices to keep pace with the increase in cost of the manufactured product, was the result of defendants' unlawful acts. Thus, it is found that when defendants left the orator company they took with them to Schenectady, the three chief salesmen of that company, the chief factory employees, and the extensive trade list of customers, and proceeded to make garments of a similar fashion out of the same kind of cloth, and so similar in appearance that in the beginning of the business of the Mohawk Overall Company its salesmen designated the goods by the orator company's own numbers; that these salesmen called upon most of the customers of the orator company with the proposition to sell to them the product of the Mohawk Overall Company instead of the orator company, which they had theretofore sold to them, and for the first four years seventy-five per cent. of the business done by the Mohawk Overall Company was done by these salesmen with the old customers of the orator company, to whom they had formerly sold goods for that company; that in the latter part of 1909 the orator made a raise in the price of its garments, and the prices of cloth in that year and in the year following also increased; that the Mohawk Overall Company, in fixing its prices, cut under this raise made by the orator company, reducing the price of their similar garments with corresponding numbers from twenty-five to seventy-five cents per dozen garments; that these cuts in the prices made by the Mohawk Overall Company corresponded with the prices of the orator company on similar garments before the raise made in 1909; that the garments produced by the Mohawk Overall Company were well calculated to meet the same trade and demand as those manufactured by the orator company; that the defendants planned to take with them employees of the orator company, and as much of its business as they could, while they were managing officers and directors of that company, in control of its business, and in confidential touch and relations with its salesmen and employees; and when so in control, commenced negotiations with some of the salesmen and employees. In *State* v. *Stewart,* 59 Vt. 273, 9 Atl. 559, 59 Am. Rep. 710, in an opinion

by Judge H. H. Powers, it is said that "a combination of two or more persons to effect an illegal purpose, either by legal or illegal means, whether such purpose be illegal at common law.or by statute; or to effect a legal purpose by illegal means, whether such means be illegal at common law or by statute, is a common law conspiracy. Such combinations are equally illegal whether they promote objects or adopt means that are *per se* indictable; or promote objects or adopt means that are *per se* oppressive, immoral or wrongfully prejudicial to the rights of others." See *Boutwell* v. *Marr*, 71 Vt. 1, 42 Atl. 607, 43 L. R. A. 803, 76 Am. St. Rep. 746; *F. R. Patch Mfg. Co.* v. *Protection Lodge*, 77 Vt. 294, 60 Atl. 74, 107 Am. St. Rep. 765. It seems to follow that an act done after the formation of a conspiracy and in the execution of the unlawful purpose, may not be a lawful act, though the same act might not be censurable if done with some other view.

Clear it is that the master did not overlook the testimony given by Corser, upon which defendants rely as showing that the finding to which the exception under consideration was taken, was not in accord with the evidence. We think that testimony, when considered with reference to the unlawful ends which the defendants conspired to accomplish, as it must be in any fair consideration of the case, does not show any cause for the orator's loss in business and profits, not the result of defendants' unlawful acts. This must have been the construction given to it by the court below; for otherwise the exception to the report in objection to the finding could not have been overruled and decree rendered for the orator as it was.

Defendants excepted to the report for that the rule of damages applied by the master was not applicable in the circumstances of the case as shown by the evidence, in that in computing the damages he took into account the orator's business for only the four years preceding the break, and did not consider the evidence relating to the profits of its business for the years 1902-1907. And it is argued that the period used for comparing the profits with those of the years in question, was not reasonable, that the entire period from the earliest year above named should have been used for such comparison. But the master has in effect found that the time of comparison used by him was a reasonable period, and we cannot say as a matter of law that it was not so. *Whitcomb* v. *Denio*, 52 Vt. 382; *New*

*England Fire Ins. Co.* v. *Haynes,* 71 Vt. 306, 45 Atl. 221, 76 Am. St. Rep. 771; *Brainard* v. *Van Dyke,* 71 Vt. 359, 45 Atl. 758; *Reynolds* v. *Reynolds,* 74 Vt. 463, 52 Atl. 1036; *Ellis's Admr.* v. *Durkee,* 79 Vt. 341, 65 Atl. 94. Defendants also excepted to the report on the ground that the master, in computing the damages, did not allow the defendants for new business procured by the orator following the year 1909. But no reason appears why such new business should have been so allowed; for it is found that the plant of the orator company had a capacity for doing business in excess of the business done by the company and that which it lost by wrongful acts of the defendants. The orator is entitled to recover all damages proximately resulting from such wrongful acts in carrying out the common design; and what was the cause of the injury, or the combination of causes producing it, was a question of fact for the trier to determine. 5 R. C. L. 1104; *Doremus* v. *Hennessy,* 176 Ill. 608, 52 N. E. 924, 54 N. E. 524, 68 Am. St. Rep. 206, 43 L. R. A. 797.

Some of the evidence was objected to by the defendants; but the only objection made thereto by exception to the report was as follows: "Defendants except to the entire report on the question of damages ＊ ＊ ＊ ＊

"b. For that the evidence received subject to defendants' exception was improperly received ＊ ＊ ＊"

This exception is too general and not in compliance with Chancery Rule 38 which requires that exceptions to a master's report "shall briefly and clearly specify the matters excepted to and the ground of the exception," and consequently it is not considered. *Fife* v. *Cate,* 85 Vt. 418, 82 Atl. 741; *Randall* v. *Moody,* 87 Vt. 68, 88 Atl. 321.

Defendants' third and fourth exceptions to the report, are to findings therein respectively set forth, on the ground that there was no evidence supporting them. But we think the record shows these findings to be warranted by the evidence and the inferences which the master might properly draw from the other facts found.

This disposes of defendants' exceptions to the report, none of them being sustained.

The orator says, under its appeal, that upon the report the decree should have further provided for the payment to it, by defendant Corser, of the sum of one hundred-fifty dollars, in

connection with the amount paid him for the use of the double-buckle patent, so-called, for the year 1909. Very likely the omission of this item from the amount of recovery was an oversight, as there seems to be no doubt concerning the orator's right thereto. The decree should be so altered as to include it.

The decree on the question of liability, from which the first appeal was had to this Court, provided that the defendants pay the orator its taxable costs together with the costs before the special master to be found and reported by him. In arguing the appeal, defendants claimed an allowance of costs on account of the expense incurred in preparing to defend the claim under the cloth contracts, which claim was abandoned by the orator as stated in the opinion rendered at that time; but as the master had established the orator's good faith, and the question was addressed to the discretion of the court of chancery, and there being nothing indicating that such discretion was not properly exercised, the decree was affirmed as to costs, neither party to recover costs in this Court. The cause being remanded and heard by the master on the question of damages, a decree was rendered for the orator on the report as to damages, and that it recover its taxable costs, "except the costs incurred solely for witnesses in establishing orator's claim under the cloth contract, the buckle patent, and Schenectady Deal, so-called, and the defendants may deduct the taxable costs for their witnesses who testified solely in refutation of said claims." It is urged by the orator that the chancellor had no power to change the decree in this respect. With this, we quite agree. The matter of costs below having been particularly considered by this Court, and the decree affirmed, there was no question as to such costs open for consideration by the chancellor. The mandate was controlling in that respect as well as in respect to the main question. Therein the decree needs to be altered to conform to the mandate.

Nor had the chancellor the power to change the terms of the perpetual injunction ordered against defendants. The decree stated in detail the substantive part of the injunction thereby "ordered, adjudged and decreed," and the decree in this regard being affirmed without alteration, it was not subsequently subject to change in the court of chancery. It follows that the terms of the injunction as set forth in the decree from which the present appeal was had, should be altered to correspond through-

out exactly with the terms of the injunction as contained in the decree from which the first appeal was taken.

*Decree affirmed with alterations, and cause remanded with mandate.*