## Vermont Shopping Center, Inc.

### v.

## Ned H. Pettengill et al

[211 A. 2d 183]

April Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Smith, J. J.**

Opinion Filed June 1, 1965

*McNamara and Larrow* for plaintiff.

*Gelsie J. Monti* for defendant Pettengill.

*Ryan & Ryan* for defendant King Estate.

**Smith, J.** The plaintiff brought a bill in chancery asking that defendant Pettengill be enjoined from trespassing upon land belonging to the plaintiff, Vermont Shopping Center, Inc., in the Town of Berlin, and from interfering with the construction of buildings on said land, and from interfering with the activities of the plaintiff's tenants and for damages. The defendant answered and filed a cross-bill. He asked that Amos C. King of the City of Barre and Richard M. and Lillian M. Cody of the City of Montpelier appear as parties to the action.

Plaintiff filed a replication to the answer and an answer to the cross-bill. The Codys and King filed answers to the plaintiff's bill and to Pettengill's answer and cross-bill. Subsequently, Amos C. King died and on petition of defendant Pettengill, the action was revived against Arthur N. McLeod as administrator of King's estate. Hearing was had before a Master, Walter H. Cleary, former Chief Justice of this Court, in Montpelier. Findings of Fact were filed and the Court of Chancery for Chittenden County entered a decree establishing the boundary line between the plaintiff and the defendant, finding a continuing trespass by defendant Pettengill on the lands of the plaintiff, and restraining the same, and entering a money judgment for the plaintiff against the defendant. The cross-bill of the defendant against the plaintiff, as well as against the King Estate and Richard M. Cody and Lillian M. Cody were all dismissed with prejudice. Such decree was based upon the findings of fact made by the Master which were expressly approved and adopted in full by the Chancellor.

The common predecessor in title to the properties now owned by the Vermont Shopping Center and Pettengill was Amos King. King gave a warranty deed to Richard M. Cody and Lillian M. Cody, dated the 22nd of September 1954, of the following described property:

"Being a parcel of land lying and being on the easterly side of the main highway leading from City of Barre to Montpelier and in the Town of Berlin, more particularly described as follows:

Commencing on the easterly line of the main highway where the northerly line of land belonging to one Sierra and the southerly line of the land herein being conveyed intersects said highway. Said point of beginning being in the center of a small stream of water which flows across the main highway and into the Stevens Branch of the Winooski River; then following the center of said stream in an easterly direction about 450 feet, be the same more or less, to its confluence with the Stevens Branch of the Winooski River; thence turning to the left and following the westerly bank of the Stevens Branch of the Winooski River in a general northerly and westerly direction a distance of 1300 ft., more or less, to an iron pin driven in the said westerly bank of said river; thence turning in an angle to the left and running in a westerly direction to a point on the easterly line of the main highway, which point measures 800 ft. more or less, northerly of the point of beginning."

The deed was recorded in the land records of the Town of Berlin, September 23, 1954.

On August 14, 1958, Richard M. Cody and Lillian M. Cody conveyed by warranty deed the same described parcel of land to the Vermont Shopping Center, Inc., and such deed was recorded in the land records of the Town of Berlin, August 17, 1958.

The deed from Amos C. King to the defendant Ned Pettengill was dated March 19, 1960, and recorded April 6, 1960, and contained the following description:

"Commencing at a stone post set on the westerly line of the main highway leading from the City of Barre to Montpelier, where the southerly line of land now owned by Burnham Jones intersects the easterly line of said highway; then proceeding along the southerly line of the Jones property in an easterly direction, 187 ft. more or less, to an iron pin set in the westerly bank of the Winooski River; thence turning to the right and running along the westerly bank of the Winooski River, in a southeasterly direction, to land now owned by Vermont Shopping Center, Inc.; thence turning to the right

and running along the northerly boundary of the Vermont Shopping Center, Inc. property, in a westerly direction, 400 ft. more or less, to the easterly line of the main highway, thence turning to the right and running along the easterly line of the main highway in a northerly direction, 120 ft. more or less, to the place of beginning. Meaning to convey a parcel of land extending from the main highway easterly to the river from the Vermont Shopping Center, Inc. land on the south to the Jones land on the north."

In the autumn of 1959, plaintiff started the construction of a shopping center consisting of a large building and parking lot. During the time that John Gardner was on the leased premises he had erected a high board fence near the northerly line of the premises in connection with a drive-in movie operation then conducted there. The plaintiff removed most of this fence during the course of its construction, later re-erecting part of said fence in the same location. A brook runs from the highway to the Winooski River a few feet northerly of the fence.

Defendant King was familiar with the location of the fence and the brook, visited the plaintiff's property several times during the construction of the plaintiff's building before his deed to Pettengill, but never complained about the location of the building or the parking lot.

Soon after defendant Pettengill purchased his land, he requested permission of an agent of the plaintiff's to cover the brook to allow customers of defendant's gasoline station to enter such station from the plaintiff's parking lot. At that time, defendant made no claim that plaintiff's building was partly over his boundary line, which is now his contention. However, defendant did later make this claim and bulldozed a four-foot high mound across the plaintiff's parking lot, resulting in the equity action now brought here.

The defendant's first briefed exceptions are to the findings of the Special Master as to the boundary line between the parties. The dispute is over the boundary line which is the northerly line of the plaintiff and the southerly line of the defendant, Pettengill. It will be recalled that the deeds from King to the Codys, and from the Codys to the plaintiff, were prior in both delivery and recording of the deed from King to Pettengill. It necessarily follows that the point at issue must be decided by determining the northerly boundary of the land of the plaintiff, for King, the common grantor to both parties, could convey to Pettengill only such part of the original premises as were left to him after his conveyance to the plaintiff's predecessor in title, the Codys. Regardless of the descriptions and boundaries that may be de-

scribed in the deed from King to Pettengill, the grantor, King's, power to convey was confined to what he then owned. *Barr* v. *Guay,* 125 Vt. 1, 209 A.2d 304.

The parties are in agreement, as the Master found, on the westerly end of the boundary line between the parties at the edge of the highway. The controversy centers on the question of where the easterly end of the north-south boundary line is fixed on the bank of the Stevens branch of the Winooski River. The Master found that such north-south line's eastern terminus was fixed by a blazed tree, viewed by the Master, and which resulted in the finding that the defendants were trespassers on the property of the plaintiff.

The property of defendant King was first surveyed in August, 1938, by George C. Cook, a civil engineer and surveyor, who drew a map of his survey in 1945. In 1949-50 Cook did some further surveying on the premises with a rodman and King. Cook sighted the line which is now in dispute as far as he could. Then, because of intervening trees and brush, King and the rodman, in response to shouted directions from Cook, extended the line to the river. Cook asked the rodman the distance to the river and located it this way: he drew the line marked "400 plus or minus" on his survey map.

Plaintiff had the land again surveyed by Richardson, a surveyor of 30 years experience, in May of 1960. It was Richardson who discovered the blazed tree. Cook, who viewed the tree, stated he had never seen it before, but the marks on it were used by him and his rodman, in marking corner boundaries. The tree, with its three blazes, was called a "witness tree" by surveyor Richardson. Defendant King, upon seeing the blazed tree, said "That blazed tree is the corner line. What's all the dispute about."

It is true, as defendant contends, that the statement of King, just quoted, was admitted only against the King estate, and that a declaration made by a deceased person regarding boundaries can be received in evidence only if made before a controversy has arisen in respect to such boundaries. *Turner* v. *Bragg,* 113 Vt. 393, 403, 35 A. 2d 356. But the evidence was admitted here, without objection, and findings of fact shall stand if there is any evidence fairly and reasonably tending to support them. 12 V.S.A. § 2385. Moreover, the finding is supported by other evidence in the case, such as that of surveyor Cook, that the markings on the tree were of a type used by him and his rodman, that they indicated a corner tree and that in his judg-

ment the tree stood in the line he surveyed with King when King was the sole owner of the land.

This finding is also supported by the Master's finding, No. 18, unexcepted to, that the Cody's line extended at least to the high fence which formerly existed on the premises, and which is north of the line contended for by the defendant. Also, that King, the common grantor, visited the premises, saw where the plaintiff had located the building and parking lot, and made no objection thereto.

Defendant also asserts that the finding of the Master that Plaintiff's boundary, measured from the blazed tree along the river bank, is in error. Such finding is based upon the testimony as to measurements made by the surveyor, Richardson, which was that such distance was 1280.8 ft. This is of no great variance from the measurement given in the deed from King to Cody which is "1300 ft., more or less . . . "

Apparently, defendant bases his exception here upon the testimony of his surveyor, Bigelow, that accurate measurements along a river bank can only be exactly made by the use of a one-foot rule. This witness admitted, however, that he had never known of measurements of a river bank being made in this manner, as well as agreeing that a river bank changes from season to season, and from time to time during a season, with the flow of water.

Our rule is that this Court must affirm the findings if there is any credible evidence to support them, and must construe the findings so as to support the judgment if possible. *deNeergaard* v. *Dillingham,* 123 Vt. 327, 330, 187 A. 2d 494; *Graham* v. *Slayton,* 122 Vt. 425, 175 A. 2d 809; *Bressette* v. *Knapp,* 121 Vt. 376, 159 A. 2d 329. The findings of the Master, here excepted to, are amply supported by credible evidence and defendant takes nothing by his exceptions.

The defendant next excepts to the failure of the Master to make certain findings of fact. These findings which defendant claims should have been made all have to do with defendant's theory on the determination of the boundary line which, defendant contended, should have followed the description in a lease, given by King, to one John Gardner on April 4, 1949, and which was assigned by Gardner to the Codys, the grantors of the plaintiff, on June 13, 1949. The leased lands were described as follows:

"Commencing on the easterly side of the Barre-Montpelier Road in the Town of Berlin, fifty (50) feet from the center of the culvert at the northwest corner of land deeded to Beebe; thence continuing in a northerly direction fifty (50) feet from and parallel to the

center line of concrete pavement a distance of eight hundred (800) feet more or less; thence turning an angle of 90 degrees and running in an easterly direction a distance of four hundred (400) feet,. more or less to the westerly bank of the Winooski River; thence following the westerly bank of the Winooski River in an easterly and southerly direction a distance of thirteen hundred (1300) feet, more or less, to the junction of the west bank of the river and a small brook entering from the west; thence following a small brook in a westerly direction a distance of four hundred and fifty (450) feet, more or less, to the point of beginning."

Defendant's whole claim of title here to the disputed premises is that this lease is in the chain of title of the plaintiff and that the provision therein that the 400 ft. line projected to the river bank as made by the 90 degree angle off from the Barre-Montpelier highway, is the line of demarcation between the plaintiff's land and that of the defendant.

But such lease is not mentioned in either the King to Cody conveyance of 1954 or in the conveyance from Cody to the Vermont Shopping Center of 1959. The King to Pettengill conveyance of 1960 does refer to a distance of 400 ft. more or less, from the highway to the river bank, but there is no mention of a 90 degree angle, and, as we have already noted, at the time King conveyed to Pettengill he could only convey what he had left of the orginal farm after his conveyance to Cody.

It is also evident that the description of the property in the deeds from King to Cody, and from Cody to Vermont Shopping Center, Inc., ran the boundaries in the opposite direction from that used in the Gardner lease.

Defendant attaches unwarranted weight to the fact that the plaintiff did have surveyor Richardson also run a survey according to the claim of the defendant. Such survey the evidence made clear, was for the purpose of investigating the defendant's claim after the dispute had arisen between the parties. The investigation by one party to a dispute of the claim of the other party cannot be considered to be an admission by the first party of the claim of the second party merely because of such investigation.

The Master states in Finding 18: "I find I cannot establish the boundary line as claimed by Mr. Pettengill. No map, no angle of 90 degrees and no lease mentioned in the year 1949 is mentioned in any of the deeds."

In this finding the Master makes clear that he considered the evidence of the defendant upon which the claimed failures to find are based, but that a sifting of the evidence by him did not result in the factual conclusions that the defendant desired. There was no requirement on the Master to detail the evidence advanced in support of the respective claims. *Amey* v. *Hall,* 123 Vt. 62, 65, 181 A. 2d 69. No error is found. The Master was not required to find as a fact an untenable theory of title advanced by the defendant.

Defendant also contends that the Master should not have found the blazed tree to be a corner marker for the reason that such tree was not mentioned in the bill of complaint by the plaintiff. The blazed tree was discovered by surveys made after the complaint was drawn, and could not have been asserted by the plaintiff before there was knowledge of it. Much of the defendant's lengthy brief is a complaint that the Master chose to believe the evidence offered by the plaintiff rather than that offered by the defendant. As we have often said, the weight of the evidence and the credibility of the witnesses is for the trier of fact to determine, and all conflicts in evidence are to be resolved against the excepting party. *Neverett* v. *Towne,* 123 Vt. 45, 179 A. 2d 583; 12 V.S.A. § 2385.

Defendant's next exception is that the Master erred in failing to make findings of fact and a decision with respect to defendant Pettengill's request in his answer and cross-bill for reformation of his deed.

It is obvious that a reformation of Pettengill's deed would also necessitate the reformation of the King to Cody and the Cody to Vermont Shopping Center, Inc. deeds as well.

This exception of the defendant is based upon his repeated assertion that the boundary of the properties of the defendant and plaintiff should have been determined by the use of the 90 degree angle mentioned in the lease from King to Gardner. But the description in the subsequent conveyance from King to the plaintiff makes no reference to such lease. As appears from the findings, as well as the evidence in the case, this description in the lease has no bearing on the plaintiff's title. The description in the lease is not used in the deed from Cody to the plaintiff, nor in the deed from King to defendant Pettengill, nor is there any reference to such lease in either of such deeds.

The defendant is claiming that there was here a mutual mistake in the deeds, which the Master did not find existed. Nothing appears in the findings or evidence that the parties put anything

in the various deeds that they did not wish placed there, or that they omitted anything that they intended to include. The jurisdiction of a court of equity to reform a written instrument upon the ground of mistake will be exercised only when the mistake is established by evidence so strong and conclusive as to place it beyond reasonable doubt. *Ward et al* v. *Lyman,* 108 Vt. 464, 467, 188 Atl. 892. That such evidence did not exist is shown by the findings of the Master that he was unable to establish the boundary line as claimed by defendant. The defendant did not establish the mistake he claimed to exist in the deeds by strong and conclusive evidence and he takes nothing by this exception.

The defendant's fourth exception is to claimed wrongful exclusions of evidence by the Master. "In the admission and consideration of evidence, such masters shall be governed by the rules of equity and report decisions made as to the admission or rejection of evidence when the party against whom the decision is made so requests in writing." 12 V.S.A. § 4368. Such question shall be treated in this Court as waived unless saved in the report though insisted upon in exceptions. *Randall* v. *Moody et al,* 87 Vt. 68, 72, 88 Atl. 321.

The record disclosed that the hearing ended on August 30, 1962. The Master was under the duty to make his findings of fact within thirty days from the time of the hearing, that is, by September 30, 1962. 12 V.S.A. § 4369. The Findings of Fact were filed on September 12, 1962. A request by the defendant in writing for a report of decisions made on the admission and exclusion of evidence was made to the Master on October 4, 1962, four days after the expiration of the thirty-day period. Such request was too late to oblige the Master to comply with it. Moreover, the record does not show that any attempt to have the report recommitted for this purpose was made. *Hooker, Corser & Mitchell Co.* v. *Hooker et al,* 89 Vt. 383, 387, 95 Atl. 649.

The defendant has made no contention that the decree in the instant case is not supported by the findings. The findings of the Master having been sustained here, it follows that the decree must be sustained as well.

The entry is *"Decree Affirmed."*