C. A. BURNHAM *v.* RUTLAND RAILROAD COMPANY.

February Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 9, 1914.

*Railroads—Killing of Horses—Liability—Lack of Cattle-Guards —Contributory Negligence—Evidence.*

In an action against a railroad company for the death of horses killed by a train at a place whither they had strayed from the highway at a grade crossing while their wearied driver was asleep, evidence *held* to warrant the finding that the horses so strayed because of want of a proper cattle-guard.

In an action against a railroad company for the death of horses killed by a train at a place whither they had strayed from the highway because of the lack of a proper cattle-guard at a grade crossing, contributory negligence is no defence.

CASE for negligence. Plea, the general issue. Trial by jury at the December Term, 1913, Addison County, *Waterman,* J., presiding. Verdict directed, *pro forma,* for the plaintiff, and judgment thereon. The defendant excepted. The opinion states the case.

*Edwin W. Lawrence* for the defendant.

*Henry B. Shaw* and *Charles I. Button* for the plaintiff.

POWERS, C. J. This is an action on the case wherein the plaintiff seeks to recover the value of two horses which were killed by the defendant's train, at a point on its main line a short distance south of the grade crossing at New Haven Junction, where the highway from Vergennes to Bristol crosses its tracks. It was agreed that there were no cattle-guards at this crossing, and that the horses were worth $350.

It appears that the plaintiff's employee, Comstock, had been on a long, hard drive of thirty-five miles, with the team on the day of the accident. The roads were very muddy and in bad

condition. Soon after eight o'clock in the evening, Comstock left his passenger at Vergennes, and started for Bristol where the team was kept in the plaintiff's livery stable. The night was very dark and foggy. After leaving Vergennes on their way to New Haven Junction, some six miles distant, and thence on home, the tired horses dropped down to a walk, and after they had gone a mile or so, Comstock fell asleep, and when he woke up found himself on the track at the point named; and one of the horses was caught by his foot in the track, and so held that Comstock could not free him. He tried to unhitch the horses, but did not succeed. He attempted to get a light and to summon help, but without avail. And before he could get the horses off the track, the defendant's train came along, and without fault on the part of the trainmen, ran over and killed them.

The defendant offered no evidence, and both parties moved for a verdict. The court below overruled the defendant's motion, and granted that of the plaintiff, *pro forma,* and ordered a verdict for the plaintiff for the agreed value of the horses. The defendant excepted.

The defendant makes but two points in its brief: · 1. There was no evidence tending to show that the horses got onto the track because of the lack of a cattle-guard; 2. The plaintiff's servant was guilty of contributory negligence.

1. There were photographs in the case which show that the highway over which the team approached the crossing from the north meets the defendant's railroad at an acute angle and curves slightly to the left in passing over the tracks To the south of this highway, and west of these tracks, the land is several feet lower than the railroad, separated therefrom by a wire fence, and covered with water. On the Bristol side of the crossing, and southerly therefrom, is the Bristol Railroad Y, within which the land is also several feet lower than the railroads, and covered with water. It thus appears that it was practically, if not absolutely impossible for the team to have reached the point of the accident except by going down the defendant's track. This evidence was sufficient to warrant the inference that the horses, instead of turning slightly to the left when they came to the crossing, turned slightly to the right and went down the track, and that proper cattle-guards

would have prevented this. So the defendant's first point is without merit.

2. The question presented by the second point of the defendant is not new. The statutory requirements regarding railroad fences and cattle-guards are the same, and have been since they were first enacted in 1849. And, while it was held in *Trow* v. *Vt. Cent. R. R. Co.*, 24 Vt. 487, 58 Am. Dec. 191, a case that arose before the statute in question became effective, that the doctrine of contributory negligence applied to a case wherein a railroad company, required on general principles to fence its road, had neglected that duty, it has always been held, in cases arising under the statute, that contributory negligence is no defence.

Thus, in *Mead* v. *B. & L. R. R. Co.*, 52 Vt. 278, it was held that the duty to fence a railroad is made absolute by the statute, and that the question of contributory negligence did not arise. This doctrine was reaffirmed in *Congdon* v. *Cent. Vt. R. R. Co.*, 56 Vt. 390, 48 Am. Rep. 793,—a case wherein the question was squarely presented for determination. Again, in *Harwood's Admr.* v. *B. & R. Ry. Co.*, 67 Vt. 664, 32 Atl. 721, which was a cattle-guard case, it was pointed out that the statutory duty regarding cattle-guards was the same as that imposed in respect of fences, and it was held that the doctrine of contributory negligence has no application to a case within the statute; and this case is expressly approved in *Quimby* v. *B. & M. R. R.*, 71 Vt. 301, 45 Atl. 223.

It is unnecessary to indicate what view of the law we might take if the question was a new one. It may be that our holdings in kindred cases are not wholly consistent with the foregoing cases, and that the distinction attempted in *Kilpatrick* v. *Grand Trunk Ry. Co.*, 72 Vt. 263, 7 Atl. 827, 82 Am. St. Rep. 939, is unsound; but the rule is too firmly imbedded in our jurisprudence to be now departed from.

*Judgment affirmed.*