WALTER J. ALDRICH *v.* BOSTON & MAINE RAILROAD.

November Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 1, 1917.

*Cattle-guards—P. S. 4450—Private Road Crossings—Evidence — Photographs — Exceptions — When without Force — Remoteness—Discretion of Court—P. S. 4458—Violation of Statute by Agister.*

P. S. 4450, providing for the construction and maintenance by a railroad company of cattle-guards at all farm and road crossings, applies to private road crossings as well as to public highway crossings.

The term "cattle-guards," as used in P. S. 4450, includes such cattle-guard fences as are necessary to effect the purpose of the statute.

In an action against a railroad company to recover damages for killing plaintiff's horse at a private road crossing, photographs of the locality, offered to show the general contour and condition of the grounds and the appearance of adjacent buildings, are admissible for the purposes named, it having been shown that the buildings

appeared the same at the time of the accident as at the time of taking the photographs, any change of conditions at the crossing being open to explanation.

Where a witness answers a question without objection, and thereafter an objection is made and sustained by the court, but the answer is not stricken from the record, the answer remains as evidence in the case, and an exception to the ruling is without force.

Generally rulings based upon the ground of remoteness will not be revised in Supreme Court.

In an action to recover damages for the death of plaintiff's mare, evidence, offered by defendant on the question of damages, that the mare had been sold by the witness for $200, more than eight years before the trial may well be rejected by the Court, in its discretion, as being of too slight a significance, where it appeared that the mare was shortly thereafter sold by the same witness to plaintiff for $225.

The fact that an agister having charge of plaintiff's mare has violated P. S. 4458, in permitting the mare to go at large within the limits of a railroad, does not affect plaintiff's right to recover for the death of the mare in an action against the railroad company based upon P. S. 4450 and 4456.

TORT for negligence. Plea, the general issue. Trial by jury at the December Term, 1915, Caledonia County, *Stanton*, J., presiding. Verdict for plaintiff. Defendant excepted. The opinion states the case.

*George B. Young* and *Walter H. Cleary* for defendant.

*Simonds, Searles & Graves* for plaintiff.

WATSON, J. The plaintiff seeks to recover the value of a certain mare, sixteen years old, that was killed by being struck by defendant's locomotive engine a little past one o'clock in the morning of May 29, 1915. The place of the accident is about one-fourth of a mile south of what is known as the Welch crossing in the town of St. Johnsbury; and this crossing is just north of the Fair Ground, and about a mile south of defendant's passenger station in that town. From St. Johnsbury south to the town of Barnet the main public highway is on the westerly side of the railroad. From this highway there is a road running

southeasterly, (called herein the Welch road,) which crosses the defendant's right of way to the Welch place situated immediately east of it. At the time of the accident there were no bars or gates on either side of the Welch crossing; nor were there any cattle-guards at this crossing, nor fences from cattle-guards to the sides of the railroad right of way, which fences it appears from the evidence are called cattle-guard fences.

At the close of the evidence the defendant moved for a directed verdict in its favor on grounds stated therein. The motion was overruled and exception saved. The same legal questions were saved by exceptions taken in connection with the charge.

In the defendant's brief it is said that the questions presented in this case resolve themselves into three main issues: (1) Is the Welch crossing a public or a private crossing? (2) If a private crossing, is the defendant required to maintain cattle-guards there to guard against cattle and horses trespassing on the lands adjacent? (3) Has the plaintiff's evidence established that a lack of cattle-guards, if cattle-guards were required, was the cause of the injury?

On the question as to the character of the Welch road, much evidence was introduced by the plaintiff to which exception was taken; and exceptions were also taken in connection with the charge on this subject. It is very evident that some of the rulings thus challenged cannot stand the test of legal analysis. Yet as we view the case the character of this road is immaterial, and the errors committed in rulings touching the same do not justify a reversal of the judgment. This road was 962 feet long, and it was open throughout, including over the Welch crossing.

It appeared that on the night of the accident the mare in question, with four other horses, escaped from the Fair Ground where they were being pastured, strayed into the public highway and from there took the Welch road, following it, or substantially following it, into the defendant's right of way at the Welch crossing, and from there south within the right of way to the place of the accident. The plaintiff's evidence tended to show that the horses went upon the Welch crossing, and from near the planking (which extended 8 or 10 inches outside of each rail of the track) went south alongside the track, but a few feet outside the west rail, some 200 yards to the north end of a cut, and from there on the ties or inside the rails to where the plaintiff's

mare was struck by the engine and killed. The defendant's evidence tended to show that on both sides of the railroad right of way there was a fence extending south from the Welch road; that the fence on the westerly side was some 28 or 30 feet from the west rail of the track; that on the westerly side just inside of the railroad right of way and near the north end of the fence, were two gate posts on the south side of the Welch road and about 2 feet from the wheel tracks, and that opposite on the north side of the Welch road and about 3 feet from the wheel tracks, was another gate post; that for some years before the accident there had not been a gate across the Welch road at this place; that on the night of the accident the horses went just through this gateway onto the railroad right of way, thence south within the right of way 25 or 30 feet alongside the fence and diagonally on the fill to within 2 feet of the rails; that they first came onto the fill beside the track about 25 or 30 feet south of the planking of the crossing; and thence they went along on the westerly side of the rails toward the cut where they went between the rails. At that time there was nothing at the Welch crossing by way of cattle-guards and cattle-guard fences to prevent cattle and other animals from going onto the railroad.

By section 4450 of the Public Statutes, it devolved upon the defendant to construct and maintain cattle-guards at all farm and road crossings sufficient to prevent cattle and animals from getting on the railroad. This provision of the law covers private road crossings as well as public highway crossings. By section 4453, a railroad is bound to construct and maintain on the sides of its road a good and sufficient fence. The statute says nothing about fences at a road crossing, extending from the cattle-guards between and just outside the rails to the fences on the sides of the railroad right of way. It is inconceivable that the spaces, where such cattle-guard fences are usually maintained, are left without any provisions of the statute touching them. If such spaces may be left open under the statute, of what practical effect is a cattle-guard which extends but approximately 2½ feet outside each rail of the track? We think that, in contemplation of the statute, the cattle-guards required by section 4450 must, in some form, extend the entire width of the railroad right of way, if necessary in order to be "sufficient to prevent cattle and animals from getting on the railroad." In other words, that the term "cattle-guards" as there used, includes such cattle-

guard fences as are necessary to effect the purpose declared. It is urged, however, that the only evidence on the subject showed that cattle-guards extend only between the rails and 2½ feet outside of each rail, and consequently, as the case is made up, there is no question but that the fence extending from the end of the cattle-guard to the right-of-way fence is outside the cattle-guard. But the statute is construed as a matter of law, without regarding this evidence.

By the section last named and section 4456, a failure to construct and maintain cattle-guards at all road crossings sufficient for the purpose stated, renders the railroad and its agents liable for the damages done by agents or engines to cattle, horses, or other animals thereon, if occasioned by want of such cattle-guards, regardless of whether such cattle, horses, or other animals were lawfully on such road crossing or not. *Harwood* v. *Bennington & Rut. R. R. Co.*, 67 Vt. 664, 32 Atl. 721; *Quimby* v. *Boston & Maine R. R.*, 71 Vt. 301, 45 Atl. 223; *Burnham* v. *Rutland R. R. Co.*, 88 Vt. 34, 90 Atl. 792. In the Quimby case it is said that the law of these sections is intended for the protection of travelers, riding in trains on railroads from accidents which might occur by reason of animals being at large upon the railroad track for want of sufficient cattle-guards at road and farm crossings, as well as to compensate the owners of such animals if injured.

The evidence shows that the five horses, including the plaintiff's mare in question, went upon the railroad at the Welch crossing on the night of the accident; and that the want of such cattle-guards at the crossing as the law required, occasioned the killing of the mare by the defendant's engine.

The foregoing holdings dispose of the three main questions presented in the various forms of exception; and the motion for a directed verdict was properly overruled.

The plaintiff offered certain photographs of the house and of the slaughter-house at the Welch place, having shown that these buildings looked the same in May, 1915, as they did when the pictures were taken. Counsel stated that he offered the photographs in connection with the testimony of the witness, for the purpose of showing what the two buildings looked like at that time, their location, and the general contour and condition of the ground at the Welch crossing. Objection was made on the ground that it was an attempt to put before the jury evidence

of changes which are incompetent and immaterial, the chief elements of importance under the declaration being the cattle-guards and fences which by the evidence are not the same. It was not error to admit these photographs for the purposes named, any change of conditions being open to explanation. 10 R. C. L. 1158; *Dyson* v. *New York, etc., R. Co.,* 57 Conn. 9, 17 Atl. 137, 14 Am. St. Rep. 82; *Beardslee* v. *Columbia Township,* 188 Pa. St. 496, 41 Atl. 617, 68 Am. St. Rep. 883.

The plaintiff's evidence tended to show that the mare when killed was worth two hundred and fifty dollars. In defence, defendant called as a witness D. R. Brown who, having testified that he knew this mare, first, when he bought her about eight years before the trial, was asked what he paid for her, and answered without objection, $185. Objection was then made and sustained by the court, but the answer was not stricken from the record, and it remained as evidence in the case. Hence the exception is without force.

Later defendant offered to show by the same witness that a short time before he sold the mare to the plaintiff (which was about eight years before the trial) he sold her to another man for $200. This offer was excluded subject to exception. The objection made was on the ground of remoteness; and generally rulings based upon this ground will not be revised in this Court. *Smith* v. *Central Vermont Ry. Co.,* 80 Vt. 208, 67 Atl. 535. It is said that the defendant had a right to the evidence offered, to meet evidence given on the part of the plaintiff as to what the horse sold for when she was eight or nine years old. Assuming this ordinarily to be so, the defendant showed by the plaintiff in cross-examination, and also by the witness Brown, that the latter sold the mare to the plaintiff for $225. This being so, the price for which the witness previously sold her may well have been rejected by the court, in its discretion, as being of too slight a significance. Thayer, Ev. 266.

After instructing the jury that the law requiring cattle-guards at railroad crossings was intended for the protection of travelers on railroad trains from accidents that might occur by reason of animals being at large upon railroad tracks for want of sufficient cattle-guards at road and farm crossings, as well as to compensate owners of cattle and horses injured for want thereof, the court said: "Any crossing open to the general travel and not protected by cattle-guards would create all these

dangers to the traveler on the railroad and might to the owner of animals straying thereon. So consider the amount and kind of travel over this crossing, for it is a very important factor in this case, as the court views it.'' Exception was taken to the last two sentences, and all that was said on the same subject-matter in such connection. It is insisted that the court should have made a distinction between a public highway crossing and a private or farm crossing, and that in failing to do this it was left to the jury to draw the inference that no distinction was to be made. But since we hold that as applied to this case, there is no such distinction under the statute requiring cattle-guards, the exception was not well taken.

The defendant requested the court to instruct the jury that, ''By Public Statutes § 4458, it is provided that if a horse or other animal is found going at large within the limits of a railroad after the same is opened for use, the person through whose fault or negligence such horse or animal is so at large shall forfeit not more than twenty dollars for every horse so going at large and shall be liable for the damage caused thereby. Plaintiff's horse was going at large within the limits of the defendant's railway the morning of the accident. If the plaintiff's horse was going at large the morning of the accident through the fault or negligence of the plaintiff or those hired to pasture said horse then the plaintiff violated a duty imposed on him by statute and cannot recover.'' The statute to which reference is here made places a liability upon only ''the person through whose fault or negligence such horse or other beast is so at large.'' One effect of this request is to say that the plaintiff cannot recover if the mare was at large, not through his fault or negligence, but solely through the fault or negligence of ''those hired to pasture'' her. Regarding this position, it is enough to say that in such circumstances only the agister violates the provisions of the statute invoked in the request, and such a violation by him cannot affect the plaintiff's right to recover against the railroad in this action based on other sections of the statute.

The above in effect disposes of all the questions raised by the exceptions, and we have no reason to believe that any errors committed by the court below injuriously affected the rights of the parties.

*Judgment affirmed.*