H. W. McALLISTER *v.* JOHN F. BENJAMIN.

October Term, 1922.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 4, 1923.

*Fraud—Remedies Available—Material Representations—Motion for Directed Verdict Not Sufficiently Inclusive—Jury Question—Settlement Must Be Specially Pleaded Under Practice Act—Argument Limited to Issues in Case—When Docket Entries Not Available to Show Exception—Necessity of Proving Scienter in Action for Fraud—Effect of Exceptions to Charge Including Language Not Used by Court—Court's Charge Not Required to Emphasize Particular Piece of Impeaching Evidence—False Representations Concerning Cattle Having Been Tested and As to Availability of Test Papers—In Exception to Charge Only the Error Assigned Will Be Considered—Damages—Exceptions too General— Exceptions on Ground of No Evidence Will Not Be Enlarged to Cover Claim of Some Evidence, But Insufficient— Declaration in Tort—General Exceptions—Harmless Error —Striking Out Testimony—Hearsay—Not Responsive—Re-*

moteness—Note for Sale Price as Evidence of Value—Certificate of Registry and Transfer Admissible on Question of Damages—Immaterial Evidence—Inadequate Briefing—Conditions Revealed by Post Mortem Admissible on Question of Whether Animal Afflicted With Disease and Character Thereof—Prejudicial Error Must Be Shown to Warrant Reversal—Insufficient Briefing—Reputation of Place for Bovine Tuberculosis Inadmissible—Assumption That Questions Were Proper Cross-examination in Support of Rulings of Trial Court—Impeaching Party by Prior Testimony—Effect of Reference to Evidence in Motion to Set Aside Verdict—Use of Transcript Not Enlarged by Reference to Evidence in Docket Entries—Diligence Required in Application to Amend Exceptions—Reargument.

1. A buyer need not rescind a contract when he discovers fraud and deceit in connection therewith, but may retain the property purchased and maintain an action for damages suffered by reason of the fraud and deceit.

2. Representations, made by the seller of certain heifers, preceding the sale, that they had been tuberculin tested since a specified date, that the test papers were available, and that the animals were a healthy, sound lot, and straight and all right in every way, were material and calculated to induce customers to purchase the stock offered for sale, and when intentionally made for that purpose and false, and the purchaser relied upon such representations, the seller was liable for each of the representations if he made them, knowing them to be false, or made them as of his own knowledge, when in fact he had no knowledge as to whether they were true or not.

3. In an action for fraud and deceit in the sale of certain heifers where two grounds of a motion for a directed verdict related solely to damages resulting to two cows owned by plaintiff but not purchased by him of the defendant, held that even if well based as to damages to these particular animals, the grounds named did not cover the question of damages otherwise resulting, within the scope of the evidence, and hence were properly overruled.

4. In an action for fraud and deceit in the sale of certain heifers, held that there was evidence tending to support plaintiff's

claim that the animals were afflicted with tuberculosis when sold to him, making the question a proper one for the jury.

5. Where the pleadings consisted of a complaint and plea of general denial, the question of settlement concerning which there was no allegation in the complaint, was not an issue in the case, for under the Practice Act (G. L. 1791, subd. 2, as amended by No. 72, Sec. 1, Acts of 1921), a general denial puts in issue only the material allegations of the pleadings so met.

6. Under such pleadings, the trial court did not err in refusing to permit defendant's attorney to argue to the jury that a settlement had been made.

7. Although the docket entries showed that defendant had saved an exception to the overruling of his motion to set aside the verdict where the transcript was made the bill of exceptions for certain specified purposes which did not include an exception to the overruling of such motion, the record does not show an exception thereto which the Supreme Court will consider.

8. In an action for fraud and deceit in the sale of certain heifers the plaintiff must prove that the falsity of the representations was known to the defendant, or, that he made the representations as being true of his own knowledge, when he did not know whether they were true or not.

9. Where an exception to the charge of the court, relating to fraudulent representations of the court, included therein, as part of the court's language, the phrase, "if they were recklessly made," when the court had not used such language, either in fact or effect, the exception was properly overruled.

10. The court was not called upon to single out for emphasis in its charge a particular piece of evidence as impeaching the testimony of the plaintiff, even though it might have that effect, on a question concerning which not only the parties, but their witnesses, disagreed.

11. In an action for fraud and deceit in the sale of certain heifers, the court did not err in failing to charge on the basis that no recovery could be had unless the animals were afflicted with tuberculosis at the time of sale, where, besides representations as to their freedom from disease, the plaintiff had falsely represented that the animals had been tuberculin tested and that the test papers were available.

12. In an action of deceit where the defendant excepted to the "failure of the court to charge that the plaintiff cannot recover by reason of any statement made by the defendant unless he has satisfied the jury that such statement so made actually resulted in injury to the plaintiff," *held* that the exception called for nothing not given in the court's charge to the effect that the plaintiff must show that he was damaged, that damage was an essential element in the case, and that unless plaintiff showed some damage resulting to him from defendant's fraud he could not recover.

13. On exception to the charge of the trial court, the Supreme Court will consider no ground of error other than the reason assigned by the excepting party.

14. In an action of deceit, where the court instructed the jury that, assuming the case to otherwise be made out, the plaintiff was entitled to recover the difference between the value of the property as it was at the time of the sale and what it would have been if as represented, an exception on the ground that the plaintiff in his declaration made no claim for damages on that basis was properly overruled, as the damages covered by the instructions were general in character and required no special allegation therefor.

15. An exception to the charge upon the question of damages, so far as it related to anything except certain specified property, for the reason that all the other damages claimed were speculative, remote, and conjectural, was without force, where there was evidence from which some of such other damages could be found.

16. An exception to the failure of the court to comply with numerous numbered requests to charge, by reference to the numbers of the requests, and to the subject-matter of the charge so far as it touches those requests, was too general to be availing.

17. An exception to the charge on the ground that there was "no evidence" on the question will not be enlarged to cover the claim that there was some evidence, but insufficient.

18. In an action for fraud and deceit, where the court adjudged that the cause of action arose from the wilful and malicious act of the defendant, and from wilful and malicious injuries to plaintiff's property, and from obtaining plaintiff's property by false representations, and that defendant ought to be confined in

close jail, *held* that an exception thereto, on the ground that the declaration was not in tort, was not well taken, as the declaration contained all the essential elements of a declaration in tort, including scienter, and, therefore, was in tort.

19. An exception to the foregoing certificate of the court, on the ground that it contained a finding beyond the authority of the court to make, is too general to save any question, in that it does not point out the particular finding claimed to be outside the court's authority.

20. In an action for fraud and deceit in the sale of certain heifers, the exclusion of evidence to show that a test of plaintiff's other cattle was not conclusive, if error, was harmless, where evidence already in the case showed that fact.

21. In an action for fraud and deceit, in the sale of certain heifers, where the defendant was called as a witness by the plaintiff to be examined as under cross-examination, and stated that, at the time of the sale, such heifers had been tested for tuberculosis at the place where he purchased them, the court did not err in striking out such testimony, upon development in subsequent examination that it was based upon hearsay.

22. Where a witness gave a responsive, categorical answer, and proceeded to add something neither explanatory nor responsive, the court did not err in striking out the part of the answer so added.

23. Where there is nothing to take the case out of the general rule, the admission of evidence objected to on the ground of remoteness, will not be reviewed in the Supreme Court.

24. In an action for fraud and deceit in the sale of certain heifers, where the plaintiff sold them under the same representations the defendant had made to him, namely, that they had been regularly tested and were free from tuberculosis, taking a conditional sale note for the sale price which was never paid but cancelled because the heifers had tuberculosis, the note was admissible, over the objection that it was immaterial, in connection with plaintiff's testimony, on the question of damages, being evidence of the value of these animals if they had been free from disease as represented.

25. In an action for fraud and deceit in the sale of certain heifers represented as free from disease, certificates of registry and transfer of a cow belonging to plaintiff, which he claimed

contracted tuberculosis from such heifers, were admissible on the question of damages, the first showing the animal to be registered and consequently more valuable, and the other showing title in plaintiff.

26. In such an action, on cross-examination of one to whom the plaintiff had resold two of the heifers purchased from defendant, evidence offered by defendant to show that no other person's cattle in witness' neighborhood had been tested at a particular time was properly excluded as immaterial.

27. Although exceptions may be mentioned and somewhat discussed in the brief of the excepting party, where they are not shown by the bill of exceptions and no reference is made to any page or pages in the transcript where they are to be found, the Supreme Court will not search through a voluminous transcript to locate them and find grounds for reversing the judgment.

28. The briefing of an exception is inadequate, where the excepting party, although giving the page of the transcript on which the exception may be found, simply states its similarity to others the whereabouts of which in the transcript is not pointed out.

29. In an action for fraud and deceit in the sale of certain heifers which had been brought from another state into this State, at which time there was no requirement for a retest within a certain time of animals so brought, although subsequently such a requirement was made by the department of agriculture, the court properly excluded as immaterial a question, asked a witness on cross-examination, as to when such requirement went into effect, no claim being made that his direct testimony contained anything making such question proper cross-examination.

30. In an action of deceit for the sale of diseased cattle represented as sound, testimony of the veterinarian who made a post-mortem examination of one of the heifers purchased from the defendant by plaintiff and sold by the latter to another person, *held* both relevant and material to the issues in the case of whether the animal had tuberculosis, and, if so, the extent and stage of the disease, and whether she was a "spreader."

31. Although evidence may be immaterial, an exception thereto on that ground is unavailing unless its admission is shown to have been prejudicial to the excepting party.

32. The briefing of an exception is inadequate, where no more is done than to restate what was said in taking the exception.

33. In an action of fraud and deceit in the sale of certain heifers, evidence offered to show that a certain place was notoriously associated with bovine tuberculosis was inadmissible.

34. The contrary not appearing, and the excepting party not claiming otherwise in his brief, the Supreme Court will assume, in support of the rulings of the trial court, that questions asked a witness were in proper cross-examination concerning matters of which the witness testified in chief.

35. Where a party testifies that he does not remember having given, at a former trial, certain testimony to which his attention has been directed, such former testimony, if concerning a material fact, is admissible as impeaching evidence, notwithstanding he does not deny having so testified.

36. Although a motion to set aside a verdict referred to all the evidence and exhibits received on the trial, and made them a part of that motion, the evidence was not thereby brought before the Supreme Court, where the transcript was not referred to for that purpose.

37. Where the transcript of the evidence was not before the Supreme Court for the purpose of a motion to set aside the verdict, although the docket entries would show that an exception to the overruling of such motion was taken, an amendment of the record to correspond with the facts shown by such entries, the evidence being no part thereof by reference or otherwise, would not permit the use of the transcript for the purpose of the motion.

38. Where the defendant, upon receiving a copy of plaintiff's brief, had notice of plaintiff's contentions that the record did not show an exception to the overruling of defendant's motion to set aside the verdict and that the transcript was not before the Supreme Court in that connection, due diligence required that defendant apply to the presiding judge for an amendment to the bill of exceptions before the rendition of any decision by the Supreme Court.

39. When a case has been fully presented, has been considered and decided by the Supreme Court, the appropriate time for argument has passed, hence re-argument of a question presented by

exception and not overlooked or misapprehended will not be granted.

ACTION OF TORT for false and fraudulent representations in the sale of cattle. Plea, the general issue. Trial by jury at the September Term, 1921, Washington County, *Moulton, J.,* presiding. Verdict for plaintiff. Close jail certificate granted, to which defendant excepted. Motion to set aside verdict made and overruled and judgment for plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Fred L. Laird* and *Edward H. Deavitt* for the defendant.

In an action for fraud and deceit in the sale of cattle, damages for injury to the plaintiff's business as a cattle dealer, and to his milk and dairy business, and for the cost of keep of the cattle purchased until they were disposed of, were improperly allowed, being excessive, remote, and conjectural. *Woodward* v. *Thatcher,* 21 Vt. 580; *Bowman* v. *Parker,* 40 Vt. 410, 411; *Pinney* v. *Andrus,* 41 Vt. 631, 644; *Wing* v. *Chapman,* 49 Vt. 33; *Dennis* v. *Stoughton,* 55 Vt. 371, 377; *Brock* v. *Clark,* 60 Vt. 551; *Turner* v. *Howard,* 91 Vt. 49; *Hadley* v. *Baxendale,* 9 Ex. 341; *Carey* v. *Gruman,* 4 Hill, 515; *Bernstein* v. *Meech,* 130 N. Y. 354; *Smith* v. *Bolles,* 132 U. S. 125.

The action, being one of contract and not of tort, a close jail certificate could not properly issue. *Caldbeck* v. *Simanton,* 82 Vt. 69; *Ide* v. *Gray,* 11 Vt. 615; *Slack* v. *Bragg,* 83 Vt. 404.

*Theriault & Hunt* for the plaintiff.

Failure to rescind a contract upon discovery of fraud does not preclude an action for fraud. *Mallory* v. *Leach,* 35 Vt. 156; *Kelly* v. *Pember,* 35 Vt. 183; *Oben* v. *Adams,* 89 Vt. 158, 164; *Bartlett* v. *Bonazzi,* 91 Vt. 192.

When a false representation is made with knowledge of its falsity, the intent to deceive is presumed. *McDonald* v. *McNeil,* 92 Vt. 356; *Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 42; *Fitzgerald* v. *Metro Life Ins. Co.,* 90 Vt. 291; *Stevens* v. *Blood,* 90 Vt. 81.

A motion to set aside a verdict as against the weight of the evidence or because damages are· excessive is addressed to the court's discretion, and in the absence of abuse of such discretion will not be reviewed. *Dyer* v. *Lalor*, 94 Vt. 103; *Raymond* v. *Sheldon's Estate*, 92 Vt. 396.

Public documents are admissible as evidence of the public acts of government, or matters of state, but they are no evidence of private interests, or to prove a fact of a private nature. *Brunred* v. *Del. Hoyo*, 20 N. J. Law, 328; *Bank* v. *Levy*, 125 S. W. 542; *U. S.* v. *Gardiner*, 25 Fed. Cas. 1245; *McMahon* v. *Tyng*, 14 Allen 167; *Garvan* v. *N. Y. C. & H. R. R. Co.*, 210 Mass. 275; *Jewett* v. *Boston Elevated Ry. Co.* (Mass.), 107 N. E. 433.

WATSON, C. J.  The plaintiff seeks to recover damages resulting from alleged false and fraudulent representations made by the defendant in the sale at auction by him to the plaintiff of certain registered Holstein heifers, September 25, 1918.  The trial was upon plea of general denial and resulted in a verdict of $2,250 for the plaintiff.

It appeared that the defendant made certain representations, by way of advertisement of the auction sale, in the issue of September 21, 1918, of. the *Barre Daily Times*, and orally at the auction, from the. auctioneer's stand.  The representations in the *Daily Times*, material here, were that "All this stock" (advertised for sale by auction, which included the Holstein heifers mentioned above) "has been tuberculin tested since February and is a healthy sound lot."  Defendant testified that, before the auction opened, he stated publicly from the auctioneer's stand that "all the animals to be sold at the auction had been tuberculin tested since February"; that· "the test papers for the animals were available to purchasers"; and that "every animal to be sold there at that auction was all straight and all right in every way."  Defendant further testified that he made those statements with the idea of inducing people to buy at the auction, and that that was the intention with which he put his advertisement in the paper.

The plaintiff purchased at the auction six Holstein heifers, and at the trial sought damages with respect to three of them, for that he claimed and his evidence tended to show that defend-

ant's representations, quoted in the preceding paragraph, were each and all of them false and fraudulent to the knowledge of defendant when he made them, or that he made them as of his own knowledge, when in fact he knew he had no knowledge as to whether they were true or not; that the heifers had not been tuberculin tested, that the test papers were not available, and that the three heifers to which reference is here made were not "all straight and all right in every way," but were, at the time of the auction, infected with bovine tuberculosis, by reason of which false and fraudulent representations the plaintiff suffered great damage with respect to the infected heifers, and also in that a valuable cow of his—Star Farm Vale Countess—and an Ayrshire heifer, contracted tuberculosis from the Holstein heifers so purchased, and in that plaintiff was put to and sustained expense in protecting his herd from infection, and in eradicating the disease from his premises. He further claimed that he had been in the business of buying and selling cattle and in dairying, and that he sustained damages of $1,000 a year in raising and caring for his herd and in developing his said business, and that he lost a profit of $1,000 a year in his business of buying and selling cattle and $100 per month in his business of dairying over a long period of time.

At the close of all the evidence defendant moved for a verdict to be directed in his favor on the following grounds:

(1) That the plaintiff by retaining the non-infected heifers after he knew that one of the others was diseased, elected to waive any right of action he may have had in respect to the heifers particularly here in question; (2) there is no evidence that defendant made any false representations concerning any material fact connected with the sale in question; (3) the evidence shows that the plaintiff relied upon defendant's agreement to buy back the heifers at an advance of $75 per head and not upon any reliance upon tuberculin test papers; (4) the plaintiff did not elect to rescind the agreement of purchase after having an opportunity to do so upon learning that at least one of the heifers was diseased, but expressly affirmed the contract of sale and continued to use the remaining heifers thereafter for several months and thereby accepted the heifers in question, and having so accepted the property and acquiesced in the sale, he could not thereafter repudiate the sale of September 25, 1918; (5) the

damages to the two other head of the plaintiff, not purchased of the defendant, (the Star Farm Vale Countess and the Ayrshire heifer,) are upon the evidence uncertain, conjectural and remote, and not a proper element of damage in any event; (6) there is no evidence that either the cow, Star Farm Vale Countess, or the Ayrshire heifer contracted tuberculosis or other disease from any of the heifers sold by the plaintiff to the defendant; (7) the evidence does not show that any damage has resulted to the plaintiff by reason of any representations made to him by the defendant; (8) there is no evidence that any representations were made by the defendant to the plaintiff with intent to deceive him; (9) the evidence shows that the plaintiff did not rely upon any representations made by the defendant, if any were made to the plaintiff, in the purchase of said heifers, but he relied upon the offer of the defendant to repurchase at an advance of $75 for each heifer which plaintiff might purchase after said offer had been made; (10) upon all the evidence for each of the reasons hereinbefore stated, there can be no recovery in respect to any items of damage claimed by the plaintiff; (11) there is no evidence that any of the heifers sold by the defendant to the plaintiff had tuberculosis at the time of the sale September 25, 1918. The motion was overruled and exception saved.

[1] The first and fourth grounds of the motion are based on the idea that inasmuch as the plaintiff did not rescind the contract of purchase when he discovered the fraud and deceit in connection therewith, he cannot maintain this action which in law affirms the contract. But this idea is unsound; for the plaintiff had a right to retain the property purchased and maintain an action for damages suffered by reason of the fraud and deceit. *Mallory* v. *Leach,* 35 Vt. 156, 82 A. D. 625; *Oben* v. *Adams,* 89 Vt. 158, 94 Atl. 506; *Bartlett* v. *Bonazzi,* 91 Vt. 192, 99 Atl. 886; *Ward* v. *Marvin,* 78 Vt. 141, 62 Atl. 46.

[2] The second ground of the motion that there was no evidence of defendant's making false representations concerning any material fact connected with the sale in question; the eighth ground, that there was no evidence of any representations by defendant to the plaintiff with intent to deceive him; and the third and ninth grounds, that the evidence shows that plaintiff relied upon defendant's agreement to buy back the heifers at the advanced price stated above, and not upon any reliance upon tuber-

culin test papers, nor upon any representations made by defendant, were properly overruled. The record does not bear out these contentions by defendant. Plaintiff's evidence tended to show that, induced by defendant's advertisement in the *Barre Times,* which he saw and read, he attended the auction and there bought the heifers in question; that before the auction opened he heard defendant make the statements (given above from defendant's own testimony) from the auctioneer's stand; that in buying the heifers he relied upon said representations made by defendant in the paper and at the auction, believing them to be true; that plaintiff thereafter, on several occasions, demanded the tuberculin test papers of defendant, but the latter, not only never furnished them, but on a certain occasion, in the presence of plaintiff, said he brought those cattle into this State illegally, without their being tested, and in effect that test papers were not available. And there was evidence in the case from which the jury was warranted in finding that at the time of the auction two of the heifers in question were tubercular and not "all straight and all right in every way," as represented by defendant. The three representations made by defendant were material and well calculated to induce customers at the auction to purchase the stock there offered for sale, and the jury might well find on the evidence that each of them was intentionally made by him for that purpose. This being so, liability attaches for each of those representations if false and if defendant made them, as plaintiff's evidence tended to show, knowing them to be false, or made them as of his own knowledge, when in fact he knew he had no knowledge as to whether they were true or not. *Stevens* v. *Blood,* 90 Vt. 81, 96 Atl. 697. This Court has said that, "A representation of a fact, as of a party's own knowledge, if it prove false, is, unless explained, inferred to be wilfully false and made with intent to deceive, at least in respect to the knowledge which is professed." *Cabot* v. *Christie,* 42 Vt. 121, 1 A. R. 313; *Fitzgerald* v. *Metropolitan Life Ins. Co.,* 90 Vt. 291, 98 Atl. 498.

[3, 4]   The fifth and sixth grounds of the motion relate solely to damages resulting to two cows owned by plaintiff but not purchased by him of defendant. Even if well based as to damages to those particular animals, they do not cover the question of damages otherwise resulting, within the scope of the evidence, and for that reason, if for no other, were properly over-

ruled. The tenth ground seems to be a short summary, referring to all the grounds previously stated, and is without significance. The eleventh ground, that there was no evidence that any of the heifers in question had tuberculosis at the time of the auction, September 25, 1918, is not borne out by the record. Two of these heifers were sold by plaintiff to one Livingston on the 11th day of October, 1919, and one of these two was found dead of tuberculosis in the pasture, July 27, 1920. The veterinary expert, a witness for plaintiff, who made a post-mortem examination, testified that the death of. the animal was caused by the tuberculous condition of the small intestines; that he there found the disease in an advanced stage; that in the opinion of the witness the disease had run a long course, a couple of years or more, and was a generalized tuberculosis case, that is, generalized through the system, or tuberculosis in several organs. The veterinary expert, called as a witness by defendant, testified in cross-examination that in a generalized case of tuberculosis the primary lesion which produced the generalized condition may be found in the animal from a time soon after its birth. The testimony given by these two witnesses, as here stated, strongly supported the plaintiff's contention that the particular heifer, on which the post-mortem examination was made, was tuberculous at the time of the auction, she then being more than a year and seven months old. The other of the heifers sold by plaintiff to Livingston, being tested with the Livingston herd September 2, or 3, 1920, reacted, and was killed. The post-mortem examination of this heifer, as in the instance of the one found dead in the pasture, showed she was in an advanced stage of the disease. And the evidence tended to show that these two heifers were the only animals connected with the herds under inquiry, that could have been "spreaders;" that is, an animal suffering from tuberculosis in such an advanced stage that it transmits the disease.

[5, 6] In the course of his argument one of defendant's attorneys proposed to argue to the jury that the parties, in February, 1920, settled for the non-delivery of the test papers, claiming the evidence tended so to show. The right so to argue was denied, on the ground that in the condition of the pleadings such settlement was not an issue in the case. On the question presented it is urged that in this State it is generally held that in an action on the case anything may be given in evidence under

the general issue, which destroys the right of action, unless it be the statute of limitations, and authorities are cited to this effect. This case, however, is governed by the Practice Act, and the meaning of that Act, as amended by No. 72, Laws of 1921, Sec. 1, providing that a general denial, in an answer, of the allegations of the complaint, shall, unless otherwise provided, have the same force as a plea of the general issue at common law; and it has been held that the force thus intended to be given such a denial is the same as that of a *general traverse,* which puts in issue only the material allegations of the pleading so met. *Dernier* v. *Rutland Ry. L. & P. Co.,* 94 Vt. 187, 110 Atl. 4; *Burlington Grocery Co.* v. *Lines,* 96 Vt. 405, 120 Atl. 169. Since the fact of such settlement constitutes no part of the allegations of the complaint, there was no error in the ruling.

[7]    The record does not show that any exception was taken to the court's refusal to set aside the verdict. The transcript of the evidence and of the entire proceedings in the cause is made the bill of exceptions, (specifically stated) as to exceptions allowed defendant on trial, including that to the refusal of the court to direct a verdict, to the refusal of the court to charge the jury as requested by defendant; and to the refusal of the court to permit defendant's attorney to argue to the jury that the parties, in February, 1920, settled for the non-delivery of the test papers. Defendant says, however, that the docket entries show that he saved such an exception, and that we may properly ascertain this fact from that source. Granting this to be so, defendant is not aided thereby, for the transcript of evidence is not here for the purpose of that motion. The specified purposes for which it was made the bill of exceptions, do not include any exception to the overruling of such motion.

[8, 9]    The court charged the jury that the plaintiff must prove that the falsity of the representations was known to the defendant, or—which amounts to exactly the same thing—that he made the representations as being true of his own knowledge, when, in fact, he did not know of his own knowledge whether or not they were true. The exception taken was to that part of the charge in which the court stated that if the defendant made representations of his own knowledge, which he did not know to be true, if they were recklessly made, and what the court said upon that matter, for the reason that under the circumstances

of this case those representations are not actionable.  There are two reasons why this exception is without force.  First, the charge given stated the law correctly; and secondly, the exception taken points to no part of the charge, for the court nowhere in fact or effect used the phrase, "if they were recklessly made, * * *."

[10]  Defendant excepted to the charge as to the special contract, as he claimed that the evidence as to the special contract even if not a completed contract, tended to impeach the testimony of the plaintiff in that he testified that he relied upon the auction bill and all the statements made by the defendant.  The special contract to which reference is here made, is the agreement which defendant testified he made with plaintiff before the latter purchased the heifers, to buy them back at an advance of seventy-five dollars each, thirty days before they freshened.  Plaintiff testified that he did not make the purchase on any such agreement.  The court charged fully concerning the effect of this agreement if the jury should find it was made by the parties and relied upon in whole or in part by plaintiff in buying the heifers, and in this respect the charge seems to have been to defendant's satisfaction; for the exception taken thereto has no significance beyond the claim that the evidence, even though it did not show a completed contract, tended to impeach the testimony of the plaintiff that he relied upon the defendant's statements in the advertisement and from the auctioneer's stand.  It may be assumed that the evidence to which reference is here made by defendant, if untrue, had a bearing on the credibility of plaintiff's testimony in the respect named, and yet the court was not called upon to single out for emphasis in its charge this particular piece of evidence as impeaching the testimony of plaintiff on a question concerning which not only the parties, but their witnesses, disagreed.  *Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416, 74 Atl. 99; *Doyle* v. *Melendy*, 83 Vt. 339, 75 Atl. 881.

[11]  Defendant excepted to the failure of the court to charge that if these heifers did not have tuberculosis at the time of the sale then there could be no recovery; also to the failure to charge that plaintiff could not recover by reason of false or untrue statements made by defendant, if he made any, unless these heifers had tuberculosis at that time.  In pointing out the faulty

basis of these two exceptions, let it suffice that the defendant seems to have overlooked, in such connection, the plaintiff's right of recovery by reason of the fraudulent representations made respecting tests and test papers.

[12] Defendant excepted to the "failure of the court to charge that the plaintiff cannot recover by reason of any statement made by the defendant unless he has satisfied the jury that such statement so made actually resulted in injury to the plaintiff." On this part of the case the court charged that the plaintiff must show that he was damaged; that damage is an essential element in the case; and unless he shows that there is some damage resulting to him from the fraud of the defendant he cannot recover, no matter how deep that fraud may have been, etc. The exception calls for nothing more.

[13, 14] The court instructed the jury that, assuming the case to be otherwise made out the plaintiff was entitled to recover the difference betweeen the value of the heifers, as it was at the time of the sale, and what it would have been if they had been as represented. Defendant excepts to this instruction for the sole reason that the plaintiff in his declaration makes no claim for damages on that basis. No other reason will be considered. The damages covered by the instruction were general in character, requiring no special allegation therefor. *Hutchinson* v. *Granger,* 13 Vt. 386; *Parker* v. *Burgess,* 64 Vt. 442, 24 Atl. 743.

[15] Defendant also excepted to the charge "upon the question of damages in so far as it relates to damages to anything except four heifers, for the reason that all of the other damages claimed are upon the evidence speculative, remote and conjectural." The charge in this respect was as follows: "But, if it is found that these four" (changed to *three* in supplemental charge) "heifers, or any of them, were infected with tuberculosis at the time of the sale, then the plaintiff is entitled to recover in addition to the difference in value, to which I have called your attention, such sum as you consider to be reasonable and just to compensate him, first, for the other cattle belonging to him which may be found to have been infected by such heifer or heifers; second, for the damage to the plaintiff as a dealer in live stock and milk, which was caused by such infection; and third, for the amount paid by the plaintiff in disinfecting and

cleansing and repairing his barns, and such other expense as he may have been put to by reason of the contamination.'' The plaintiff's evidence tended to show that other cattle, owned by him, were infected by one or two of the heifers which he bought at the defendant's auction, which his evidence further tended to show were ''spreaders'' and the only ''spreaders'' by which his other cattle could have been infected. There being such evidence on that point, the exception is without force. *In re Healy's Will,* 94 Vt. 128, 109 Atl. 19.

[16]   Defendant made 16 requests to charge, and excepted ''to the failure of the court to comply with request No. (naming all of the 16 except Nos. 2 and 10), and to the subject-matter of the charge so far as it touches those requests.'' No authorities need be cited to show that this exception is too general to be availing.

[17]   After exceptions were taken to the main charge, and in accordance with suggestion made by plaintiff, the court further charged that as an element of damage the jury might consider the cost of bringing up the heifers from the day they were bought at auction until the time they were killed and otherwise disposed of.   Exception was taken to this on the ground that ''there was no evidence on that question'' and that the finding of the jury thereon would be merely guesswork.   In defendant's brief it is stated that ''The only evidence which can have any bearing upon this particular matter were the following questions and answers of the plaintiff himself''; then quoting from plaintiff's testimony concerning one of the heifers in question. The testimony there quoted was that plaintiff paid $100 for the heifer, and that when she was tested in the fall of 1920 she was worth $250; and that the difference between the two sums fairly represents the labor and trouble and expense he was to in raising her in that time.   The exception that there was ''no evidence on'' the question, will not be enlarged to cover the claim that there was some evidence, but insufficient.   *Thayer* v. *Glynn,* 93 Vt. 257, 106 Atl. 834.

[18, 19]   The court adjudged that the cause of action arose from the wilful and malicious act of the defendant and from wilful and malicious injuries to the property of the plaintiff, and from obtaining the property of the plaintiff by false representations, and that the defendant ought to be confined in close

jail.   To this an exception was noted on two grounds: (1) That the declaration is not in tort, and (2) that the certificate granted contains a finding which the law does not authorize the court to find.   This exception is not well taken.   As to the first ground, the declaration contains all the essential elements of a declaration in tort, including the *scienter*, and we hold it to be in tort. *Caldbeck* v. *Simanton*, 82 Vt. 69, 71 Atl. 881, 20 L. R. A. (N. S.) 844; *State* v. *Bannister*, 79 Vt. 524, 65 Atl. 586.   And the second ground is too general.   It does not point out the particular finding, claimed to be outside the authority of the court, and so is not sufficiently specific to save any question.   *Landon* v. *Hunt*, 82 Vt. 322, 73 Atl. 865.

The exceptions pertaining to the admissibility of evidence remain to be considered, and they will be taken up by number.

[20]   66. Defendant excepted to the refusal of the court to admit in evidence the report of the commissioner of agriculture of this State for the biennial period ending June 30, 1920, and particularly page 59 and a part of page 60.   This evidence was offered to show that the test under which the cow, Star Farm Vale Countess, and other cattle testified about, have come into the State through Mr. Abbott, is not conclusive.   It was excluded, the court saying the evidence already in the case shows that fact, and asked if there was any dispute about such being the evidence.   To this inquiry defendant's attorney said they offered the report in connection with what had appeared with reference to that question.   It is not claimed that any evidence was introduced during the trial tending to show otherwise than as stated by the court, and concerning the fact so stated there was no dispute.   The case standing in this way on the evidence already in, to the end of the trial, we need not consider whether there was or was not error in the ruling, for if there were it is not conceivable that any harm resulted therefrom to the defendant.   *Hopkins* v. *Sargent's Estate*, 90 Vt. 185, 97 Atl. 657; *Bradley* v. *Blandin*, 94 Vt. 243, 110 Atl. 309.   The same legal question is presented by exceptions 33, 34, 35, 36, 37, 52, 53, 54, and 55.   In each instance the exception was to the exclusion of evidence offered for the same purpose.   As stated in disposing of exception 66, and for the same reason, the rulings, even though erroneous, were harmless.

[21, 22]    2 and 3.    The defendant was called to the witness stand and examined under the statute as in cross-examination.    During such examination he was asked if, at the time of the auction, these heifers had in fact been tested for tuberculosis. He answered that they had.    On being asked where, answered, "tested in New York State."    To the question, where in that state, answered, "To these places that I bought them."    He was then asked how he knew, and answered, "They told me they had."    To the next question, whether that was all he knew about it, said it was.    Thereupon, on plaintiff's motion, and subject to exception, the court ordered stricken out the answer of the witness that they had been tested.    The witness was then asked: Q. "The fact is that at the time of your auction you did not personally know whether they had or had not been tested for tuberculosis, did you?"    He answered, "No sir, I never saw any test charts on them."    Subject to exception, the court ordered stricken out all of this answer after the words, "No sir."    It was not error for the court to order his hearsay answer stricken from the record, when, on further examination, his testimony made it clear that the answer was in fact of that character.    As to the second ruling, the witness was being examined as to his personal knowledge, and the question asked was too plain to be misunderstood.    After some effort on the part of the examiner, the witness gave a responsive categorical answer, but proceeded to add something neither explanatory in nature, nor responsive. There was no error in striking out the part of the answer so added.    *Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416, 74 Atl. 99.    Defendant cites *Adams* v. *Ladeau*, 84 Vt. 460, 79 Atl. 996, as supporting his position on this question.    But that case has no bearing.    It has nothing to do with the examination of witnesses, nor with the striking out of irresponsive answers given by them.

[23]    5 and 6.    Exceptions were taken to the admission of the certificates of transfer from the plaintiff to Livingston, of the two heifers sold to the latter.    Objection thereto was made on the ground of remoteness.    But there is nothing taking this instance out of the general rule that holdings based on that ground will not be revised in this Court.    *Aldrich* v. *Boston & Maine R. R.*, 91 Vt. 379, 100 Atl. 765; *Smith* v. *Martin*, 93 Vt. 111, 106 Atl. 666.

[24]   7.  Plaintiff's evidence tended to show that he sold the two heifers to Livingston for $450, under the same representations as to their being regularly tested cattle, and free from tuberculosis, as plaintiff had bought them of defendant; that plaintiff took Livingston's conditional-sale note for the sum named, but it was never paid, it being cancelled because the heifers were not as represented by him, one of them having died of tuberculosis, and the other having been slaughtered because she had the same disease.  As bearing on the question of damages, this note was admitted in evidence, subject to objection as immaterial.  There was no error in this ruling.  In connection with plaintiff's testimony, it was evidence of the value of the two heifers if they had been free from disease, as represented by the defendant.

[25]   8.  Subject to like exception, the certificate of registry and certificates of transfer of the cow, Star Farm Vale Countess, were also received in evidence on the question of damages.  The first paper showed that she was a registered animal and consequently more valuable, and the others showed title in the plaintiff.

[26]   13.  Livingston was called as a witness by the plaintiff.  In cross-examination he testified that he did not know when the plaintiff bought the heifers in question, because he had them quite a while before the witness knew of it.  He then testified that his cattle had not been tested (referring back to 1918).  He was then asked whether, up to that time, there had been anybody's cattle tested around there, and objection being made as immaterial, defendant offered to show as a negative answer to the question would indicate.  Subject to exception, the evidence was excluded.  The correctness of this ruling is too apparent to require further notice.

[27]   24 to 28, inclusive.  These exceptions are mentioned and somewhat discussed in defendant's brief, but no reference is made to any page or pages in the transcript where they are to be found, nor are they shown by the bill of exceptions.  The court will not search through a voluminous transcript for exceptions by number, taken during the course of the trial, to find grounds for reversing the judgment.  *Gordon* v. *Deavitt,* 85 Vt. 338, 81 Atl. 1128; *Hopkins* v. *Sargent's Estate,* 88 Vt. 217, 92

Atl. 14; *Barclay* v. *Wetmore & Morse Granite Co.,* 94 Vt. 227, 110 Atl. 1.

[28] 31. It is said in defendant's brief that "the same situation exists as to exception 31, as the ones last discussed," referring to numbers 24 to 28, inclusive, which we have just noticed. The page of the transcript where No. 31 may be found is given, but simply stating the similarity of the situation of this exception to others, the whereabouts of which in the transcript is not pointed out, is not adequate briefing within the requirements of the rule. *Hopkins* v. *Sargent's Estate,* 88 Vt. 217, 92 Atl. 14.

[29] 32. In the course of the cross-examination of one Going, chief clerk of the department of agriculture of this State, a witness called by the plaintiff, the witness testified that at the time the cattle in question were brought into this State from the state of New York, there was no requirement of the department of agriculture that there must be a retest within a certain time after cattle come from another state into this State, when they have been tested outside; but that at the present time there is such a requirement. He was then asked when that requirement went into effect. To the exclusion of this question an exception was saved. No claim is made that his direct testimony contained anything by reason of which this question was proper cross-examination. There was no error in excluding the question on the ground of immateriality.

[30] 43 to 50, inclusive. These exceptions were taken during the direct examination of the veterinarian expert called by the plaintiff, and relate to his testimony concerning the post-mortem examination made by him of the body of the Livingston heifer found dead in the pasture July 27, 1920. As before seen this was one of the heifers bought by the plaintiff at defendant's auction sale, and sold by plaintiff to Livingston, October 11, 1919. The objection to the evidence was that it was irrelevant and immaterial. Whether this heifer died of tuberculosis, or had that disease at the time of her death, and if she did, the extent and stage of the disease, and whether she was a "spreader," were questions of great importance in the case. It is difficult to see how more relevant or more material evidence could have been adduced on those questions, and it was properly received.

[31]  51.  The plaintiff's evidence tended to show that in 1918 the herd of R. W. McAllister (brother of plaintiff) consisted of twenty head of cattle; that seventeen of them, which he bought of C. C. Abbott of Waterbury in 1917, were tuberculin tested before he purchased them, but the other three, being two heifers and a bull, were raised by McAllister and had then never been tested, but were later and found to be "O. K."; that the six heifers bought by plaintiff at defendant's auction, were later driven from the place of the auction to the farm of R. W. McAllister, where they remained about two months; that during this period these heifers were some of the time in the latter's pasture with his dry cows and heifers, and some of the time they were put into the stable nights with his milch cows; that within the same time some of the dry cows in the pasture with plaintiff's heifers, freshened and were put in with the milch cows; that in November, 1919, R. W. McAllister had his cattle tested, the result being that, of the twelve or thirteen cows tested, four reacted, and three were left suspicious; that in February following an examination of the entire herd was had, resulting in two of the three suspicious animals being condemned, and in all others being pronounced clean.  Subject to exception on the ground of immateriality, papers were admitted in evidence, showing permit and test of one of the cows which came through Brattleboro Sales Company and were sold to Abbott and by him to McAllister.  In defendant's brief our attention is called to the statement made by plaintiff's attorney in connection with the introduction of this evidence.  The statement (to the trial court) was, in short, that of only one cow in McAllister's herd, which came through the Brattleboro Sales Company to Abbott and from him to McAllister, could complete proof be then made, though they hoped to do so as to the others before the evidence should be closed; that, as testified by McAllister, five of his cows bought of Abbott came through the Brattleboro Sales Company, and there was no record of four of them being tested, so it was impossible to say that McAllister had a clean herd when the heifers in question were placed with it four days after defendant's auction, and the heifers ran with that herd for two months before being taken to plaintiff's premises.  It is urged in behalf of defendant that in these circumstances there is no certainty that R. W. McAllister's herd was clean or free from disease at the time the plaintiff's

heifers were placed with it; and consequently there is as much evidence that the heifers in question became infected from that herd as there is that the herd became infected from those heifers. It should be borne in mind that the consideration of the particular ruling now under review does not involve the other evidence in the case bearing on the origin of this infectious disease among the herd of the plaintiff, or that of R. W. McAllister.   It is confined to the ruling, admitting certain evidence challenged as immaterial.   The argument of defendant is pretty convincing that on his own hypothesis, we may assume the evidence in question to have been immaterial, and yet there is nothing making its admission appear to have been prejudicial to defendant, without which the exception cannot avail.   *In re Well's Will*, 95 Vt. 16, 113 Atl, 822.

[32]   57.   The defendant, after showing by his expert veterinarian witness that he was unacquainted with H. L. Bronson, offered to show that the witness had had knowledge of other cattle of Bronson's which had been shipped into the State, and after a 60-day retest, although they had been passed in New York, reacted—showed reactors.   This evidence being excluded, defendant's attorney said he more particularly offered to show that the witness was called in about July, 1919, at Mr. Abbott's place at the time of a retest upon Bronson's cattle, which had been shipped to Abbott, and there held in quarantine for sixty days upon which a subcutaneous test had been had in New York state before they were shipped, and of the eleven head seven reacted upon a subsequent test after sixty days by a veterinarian of this State.   The court inquired if that included any of the cattle which are directly involved here, and on being told by defendant's attorney that it did not, excluded the evidence.   An exception was saved.   Regarding this exception defendant's brief does no more than to state over again what was said in taking the exception.   We hold this, as has been held before, not to be adequate briefing.   Nos. 65 and 71 are disposed of in the same way.   *Barclay* v. *Wetmore Granite Co.*, 94 Vt. 227, 110 Atl. 1.

[33]   58.   Exception was taken to the exclusion of offered evidence to show that Cortland, N. Y., is a place notoriously associated with bovine tuberculosis.   The fallacy of this offer is too apparent to require further notice.

[34]   59 and 60.   The questions here presented arose in the cross-examination of defendant's expert witness.   It is enough to say, in disposing of these exceptions, that no claim is made in defendant's brief, nor is it made to appear, that the questions to which objection was made, were not in proper cross-examination concerning matters of which the witness had testified in chief.   In support of the rulings, the fact that they were so will be assumed.   *State* v. *Marino,* 91 Vt. 237, 99 Atl. 882.

[35]   67.   In rebuttal the plaintiff was permitted to read into the record certain parts of defendant's testimony given at the former trial of the case, to which his attention had been directed and which he did not admit having given.   Objection was made on the sole ground that he does not deny so testifying—he merely says he does not remember so testifying.   Consequently it is now said there was nothing to be contradicted, and so its reception was error.   But as applied to a party, this is not sound reasoning; for unless he admits so testifying, it being a material fact, it may be shown that he did, standing, perhaps, as an admission and also serving as impeaching evidence.

*Judgment affirmed.*

## ON MOTION FOR REARGUMENT

After the foregoing opinion was handed down, the defendant, on leave granted, filed a motion for reargument, and the same, on consideration, is denied.   We have recently held that the object of such a motion is to point out matters presented in the brief and relied upon in argument, which it is thought were overlooked or misapprehended by the Court in reviewing the case.   *Ryan* v. *Orient Ins. Co.,* 96 Vt. 291, 119 Atl. 423.   In the present motion no attempt is made to point out either, and neither is made the basis of the motion.

Defendant claimed and briefed an exception to the overruling of his motion to set aside the verdict as excessive and against the weight of evidence.   His claim in this respect was met in plaintiff's brief by the assertion, among other things, that "no such exception is on the record, nor is the evidence before the court in this connection * * *.   In any event the transcript is not here for this purpose, for the purposes for which it is here, particularly specified, do not include this purpose."   Defend-

ant's reply brief says the docket entries show that such an exception was taken, and that the docket entries are a part of the record without any particular reference thereto in. the bill of exceptions, citing authorities in support of this position. In disposing of the question in review we said that granting the docket entries are a part of the record, defendant is not aided thereby for the reason that the transcript of evidence is not before us for the purpose of that motion.

[36]  The reply brief does not undertake to answer the assertion in plaintiff's brief that the transcript is not here for such purpose. But as a part of the motion for reargument defendant says that in his motion to set aside the verdict he referred to all the evidence and exhibits received on the trial and made the same a part of that motion. Let this be so, the evidence was not thereby brought before us. Similar holdings have been had so many times that, as was said in *Gates* v. *Dewey Company,* 94 Vt. 320, 111 Atl. 441, the citation of authority is unnecessary.

[37, 38]  It was said in the reply brief, in connection with the argument that the docket entries are a part of the record, that if the Court should hold the record to be defective, defendant asks for an opportunity to apply to the presiding judge below, "for an amendment of the record to correspond with the facts shown by the docket entries." Yet the evidence is no part of those entries, by reference or otherwise, and so if the record were amended as mentioned, the use of the transcript would still be limited to the purposes previously specified. Furthermore, defendant had notice of the plaintiff's position in this respect when he first received copy of the latter's brief, and if he desired to apply to the presiding judge·for an amendment of the bill of exceptions, due diligence required that it be done before . the rendition of any decision by this Court. To hold otherwise would be to say that he could take his chances on the exceptions as they stand, knowing of plaintiff's contention in the respect named, and if the result be against him then get an amendment of the record, and in consequence thereof ask for and perhaps get a new trial in review—a mode of procedure no more to be countenanced in actions at law than in suits in equity, regarding which latter we have heretofore spoken. *Hooker, Corser & Mitchell Co.* v. *Hooker,* 89 Vt. 383, 95 Atl. 649.

[39]   Defendant also wishes to be heard anew on the exception to the exclusion of certain offered evidence.   No claim is made that the question presented by the exception was overlooked or misapprehended by this Court.   Recurring to the Ryan case, we call attention to the very proper and forcible comment there made, and equally applicable here, that when a case has been fully presented, has been considered and decided by the Court, the appropriate time for argument has passed.

*Motion overruled.*

NOTE:—MILES, J., having ceased being a member of the Court took no part in the decision of this case.